# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA           :

      vs.                                 :   CRIMINAL NO.  CR  (  )

JOHN EASTMAN                        :   November 24, 2015

## AFFIDAVIT OF JOHN EASTMAN

I, John Eastman, hereby state as follows:

1. My name is John Eastman. I am the defendant in this case. I make this statement freely and swear, under penalty of perjury, that it is true.

2. On the evening of November 10. 2012, at approximately 6:00 PM, I was in my home, which I share with my mother, Linda Eastman, at 157 Congress Avenue, Apt. #3, Waterbury CT, 06708.

3. Two men who verbally identified themselves as police officers knocked on the door and said they wanted to ask me some questions. They did not display identification or give their names.

4. When I opened the door, the men stepped inside, forcing me to stumble backwards. I did not invite them in, nor did they ask if they could enter.

5. The man I later learned was Detective Morgan began asking me about my Skype habits, and I agreed to go with him to the police station for an interview.

6. I was told at that time that I was not under arrest, and the request to go to the station was phrased as a request, not an order.

7. I was then handcuffed and told to sit on the couch while Detective Morgan began to search the apartment. I was told "Relax, Don't move" by the man I now know was Officer Terni, and he placed his hand on my shoulder as if to sit me down.

8. Detective Morgan looked inside packed boxes and desk drawers in the living room, entered the kitchen without permission and began looking through counter drawers and into the pantry area, and entered my Mother's bedroom, where she had been asleep, without asking permission, waking and surprising my mother.

- 1 -

9. My mother, who had been asleep in her own bedroom, came out and also demanded of the officers that they show some authority for the search they were conducting. The officers ignored both of our requests.

10. When I said I needed to use the bathroom, and rose to go do so, I was told to stop by Officer Terni, who then took the handcuffs off and allowed me to use the bathroom, but insisted that I keep the door open so he could observe me. He also told me not touch anything in the cabinets and to keep my hands free. I asked for some privacy, and he turned his head away, but the door remained open.

11. When I emerged from the bathroom, I saw Detective Morgan in my bedroom, looking inside dresser drawers. I again protested that he had no right to conduct any such search. He again ignored me, and disconnected the computer tower in my bedroom from its screen and picked it up. He shook it and said "Is there a hard drive in here?" I replied that he was not supposed to be touching it.

12. I was then put in handcuffs again and driven the to the Waterbury police station. I was placed in the back seat of the police officer's vehicle in handcuffs.

13. When we arrived at the police station, Detective Morgan asked me my age, which I told him, and he then explained that he was investigating a complaint from some young women in Vermont about an interaction they had had on Skype. He read me a statement from a Vermont State Trooper about the incident. He asked me if I knew anything about the incident. I denied it, and demanded the return of my computer.

14. At that point Detective Morgan became confrontational. He jumped up from his chair and put his face very close to mine. He said that if I did not cooperate with him he would lock me up and make my bond $250,000, adding that "it's the holiday weekend and you won't go to court until Tuesday and you know how the conditions are in our city jail.... Do you want that?"

15. I believed I was under arrest, so I asked what the charges were and requested a lawyer, pointing out to Detective Morgan that he had requested a simple interview, and instead handcuffed me, conducted an illegal search of my home, and threatened me.

16. Detective Morgan began to type up a statement. He did not ask, nor did I answer, any further questions about the Vermont incident or my past. Detective Morgan printed the statement, which to the best of my knowledge is the one provided by the government. I read it but refused to sign it, nor did I acknowledge any of the facts in it as true.

17. After my refusal to sign the statement, Detective Morgan told Officer Terni to drive me home. When he did so I asked for the return of my computer and inquired whether he had taken anything else from my home. Detective Morgan ignored my requests and I left with Officer Terni. In the car with Officer Terni I again requested the return of my computer and was told I would get it "soon" or "in three days." He added that the police wanted to examine the Skype records on the machine.

18. When Officer Terni dropped me at my home he gave back to me four cell phones they had taken from my house. Despite what I had been told I did not hear from either man again, nor was my computer returned.

19. I have been shown the documents provided by the government to my attorneys titled "Consent to Search Form," (Disc-0038); Voluntary Statement Rights Form (Disc-0039); "Advisement of Rights" (Disc-0040) and "Voluntary Statement (Disc-00036-37). I did not sign or initial those documents. I do not know whose signatures/initials are on those forms; they are not mine.

20. The above statement is true and accurate to the best of my knowledge.

21. I declare under penalty of perjury that the foregoing is true and correct. Executed on November 25, 2015.

X _John Eastman_

John Eastman


Sworn before me this 25th day of November, 2015.

X _[signature]_

Witnessed: