# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : Criminal No. 3:16-CR-006(MPS) |
| v. | : |
| | : |
| JOHN EASTMAN | : March 25, 2016 |

**DECLARATION OF PETER MORGAN
IN SUPPORT OF GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

I, Peter Morgan, a Detective with the Waterbury, Connecticut Police Department, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am a Detective with the Waterbury Police Department. I make this declaration in support of the Government's Memorandum in Opposition to Defendant's Motion to Suppress Evidence in the above captioned case.

2. I have been a member of the Waterbury Police Department since 1995. I started as a police officer and became a detective in 2004. I am currently assigned to the Criminal Investigations Bureau and work in the Computer Crimes Unit. I am also a computer forensic examiner.

**The Pre-Interview Investigation**

3. On or about October 25, 2012, the Waterbury Police Department received a complaint and investigative reports from Trooper Eric Jollymore of the Vermont State Police, which I then reviewed. Trooper Jollymore's reports indicated that on or about September 13, 2012, the mother of an 11-year old girl in Vermont called the Vermont State Police to report an incident that occurred when her daughter and two of her friends were using Skype during a sleepover the weekend before. Trooper Jollymore then spoke with the 11-year old girl, who

1

indicated that she and her friends were using the Skype program to speak with people over the internet, including individual on Skype using the username "Harry.Styles888." Harry Styles is a member of the musical group "One Direction" that is popular with teenagers. The girl reported to Trooper Jollymore that during the Skype conversation, "Harry.Styles888" requested that they activate their web cam so that he could see them. The girl further reported that she told "Harry.Styles888" that they were 13 years old, and "Harry.Styles888" informed them that he was 18 years old. The girl reported that after she activated her web cam, "Harry.Styles888" asked them if they could pose in the sexual position called "Doggy Style" in front of the web cam for him. The girls stated that they did not perform the act, and the conversation ended shortly after this.

4. Through a court order, Trooper Jollymore obtained from Skype the subscriber information associated with the screen name "Harry.Styles888." Skype reported that the "Harry.Styles888" account was activated on July 27, 2012 from a computer using internet protocol address 76.23.191.201 (the "Suspect IP Address"), which Trooper Jollymore subsequently determined was assigned to Comcast Cable to a subscriber in Waterbury, Connecticut. At that point, Trooper Jollymore referred the matter to the Waterbury Police Department for further investigation. The case was then assigned to me.

5. On or about November 1, 2012, I applied for and obtained an ex parte order from a Connecticut Superior Court Judge in Waterbury requiring Comcast to disclose subscriber information for the Suspect IP Address. I then sent the order to Comcast.

6. On or about November 8, 2012, Comcast reported that on July 27, 2012, which was the date and time the "Harry.Styles888" account was activated on Skype, the Suspect IP

Address had been assigned to the account of John Eastman ("Eastman") of ▮▮▮▮▮ ▮▮▮▮▮, Waterbury, Connecticut ("Eastman's Residence").

**Events at Eastman's Residence on November 10, 2012**

7. On or about Saturday, November 10, 2012, I was working a weekend rotation at the Waterbury Police Department. Detective David Terni of the Waterbury Police Department was also working that weekend. I know that Detective Terni has been a detective with the Waterbury Police Department for several years.

8. That evening, I asked Detective Terni to accompany me to Eastman's Residence to try and locate and speak with Eastman about the incident in Trooper Jollymore's report. I did not obtain a search warrant at the time because I felt I needed additional information to support an application for a search warrant to seize computer related items. I believed the better course of action was to try and speak with Eastman first.

9. Detective Terni agreed to accompany me and we drove together to Eastman's Residence. Although I do not recall the exact time we left the Waterbury Police station, I do recall it was dark outside and was sometime between approximately 6:00 p.m. and 6:30 p.m.

10. Upon arrival at Eastman's Residence, I knocked on the door. Eastman answered the door, and I identified myself and Detective Terni to Eastman. Although we were dressed in plain clothes, I showed Eastman my police shield and stated I was with the Computer Crimes Unit of the Waterbury Police Department. I recall that Detective Terni was wearing his police shield around his neck and was visible.

11. Eastman invited us inside the apartment. Once inside, I informed Eastman that he was not under arrest and that I was conducting an investigation regarding his internet activity. Eastman stated he wished to cooperate. Eastman sat down on the couch in the living room.

Eastman was never placed in handcuffs during the time Detective Terni and I were in his residence.

12. While I was explaining the nature of my investigation, Eastman's mother came out from a bedroom and asked what was happening. I told her we were from the police department and explained we were investigating Eastman's internet activity. At the same time I was talking to Eastman's mother, Eastman told his mother to go back inside her room and that everything was okay. Eastman's mother then went inside her room and closed the door. Neither Detective Terni nor I entered her bedroom.

13. I observed a laptop computer in plain view and I asked Eastman about the laptop. Eastman stated he did not use that laptop. Eastman stated he had a desktop computer in his bedroom that he uses, and Eastman then showed us his bedroom. Detective Terni and I followed Eastman to his bedroom. In the bedroom I observed the desktop computer, along with a webcam and a reclining chair. I asked Eastman if we could take the desktop to the police station to be examined for further investigation. Eastman verbally consented for us to take the computer. I then unplugged the desktop computer and disconnected it from the monitor. I did not ask to take the other laptop computer because Eastman indicated he did not use that computer. At that point, after seeing the desktop computer and the webcam, along with a reclining chair positioned in front of it, if Eastman had not provided his consent to take the computer, I would have immediately had officers remain outside the apartment while I applied for a search and seizure warrant.

14. I also asked Eastman if he would be willing to come to the Waterbury Police Department to speak with Detective Terni and I about the case. Eastman agreed to come to the station to speak with us.

15. Prior to leaving, Eastman used the bathroom. Eastman closed the door as he was using the bathroom. Also, before leaving, Eastman knocked on the door to his mother's bedroom to let her know where he was going. Eastman's mother inquired as to whether her son was under arrest and I responded no.

16. We then left the apartment and proceeded to the car. Eastman sat in the back seat of our car, and we drove Eastman to the Waterbury Police station. Eastman was not in handcuffs during the drive.

17. I believe the amount of time Detective Terni and I spent in at Eastman's Residence was less than half an hour. At no time did we enter the kitchen or any other room in the apartment, except for the living room and Eastman's bedroom. We did not conduct a search of the apartment and the only item we took from the apartment was the desktop computer, which Eastman verbally agreed to let us take. Eastman never asked us to leave the apartment and never asked for a search warrant. Eastman's mother also never asked us to leave the apartment, never asked for a search warrant, and never informed us we could not take the computer from Eastman's bedroom. Eastman was never placed in handcuffs and he was calm and cooperative throughout the period we were at his residence.

### Eastman's Voluntary Statement at the Police Station

18. After we arrived at the Waterbury Police Station, we proceeded to the second floor to interview Eastman. I sat at a desk in an open area next to a computer. Eastman sat next to me. Detective Terni was across from us. Eastman was not in handcuffs during the interview. There is no video recording of the interview because prior to 2014, the Waterbury Police Department was not equipped with video recording devices to record interviews.

19.     Before I asked Eastman any questions, I provided Eastman with an "Advisement of Rights" form. A copy of the form is attached hereto as Exhibit A-1. I read out loud each of the Constitutional rights contained on the form. Eastman initialed each of the rights contained on the form and agreed to waive those rights. Eastman then signed the form. I also signed the form and noted the date and time, which was November 10, 2012 at 6:55 p.m.

20.     After I advised Eastman of his rights, I interviewed Eastman and he described his use of Skype to interact with minors. After the interview, I opened a computer program on my computer that allows me to type his statement into a "Voluntary Statement" form. The way the computer program operates is that upon opening the program and entering preliminary case details, the program first generates a "Voluntary Statement Rights Form" which, like the "Advisement of Rights" form discussed above, lists an individual's Constitutional rights. I provided the form to Eastman and had him read the form to himself. Eastman placed his initials next to each right and then signed the form agreeing that he understood and wished to waive those rights. I also signed the form and noted the date and time, which was November 10, 2012 at 7:32 p.m. A copy of the form is attached hereto as Exhibit A-2.

21.     I then finished typing Eastman's statements from the interview into the "Voluntary Statement" form, printed the form, and then handed it to Eastman. I asked Eastman to read portions of the statement out loud to make sure he could read the form. After reviewing the statements on the form, Eastman asked me to make a change to one of his statements. Although I do not recall specifically what he asked me to change, I made the change he requested, reprinted the form, and provided it to Eastman.

22.     I am aware the internal procedures at the Waterbury Police Department require me to take the following steps before the individual making the statement signs the Voluntary

6

Statement form: once the individual has read the statement and is satisfied with its contents, a supervisor is called into the room to notarize the individual's signature. Another officer is also present to witness the signature. The supervisor administers an oath to the individual as set out on the bottom form, observes the individual initial each page in two places, and then observes as the individual signs all pages of the statement. Then supervisor then signs his own name notarizing the individual's signature. Finally, the third officer signs as a witness.

23. In accordance with those procedures, I called Lieutenant William Fox to come up and notarize and observe while Eastman signed the Voluntary Statement. Lieutenant Fox has since been promoted and is currently a Captain at the Waterbury Police Department. Lieutenant Fox was present when Eastman initialed and signed the Voluntary Statement on each page. Lieutenant Fox then signed the form on each page. Finally, Detective Terni signed the form on each page as a witness. A copy of the signed form is attached hereto as Exhibit A-3.

24. I also asked Eastman to sign a Consent to Search form to memorialize the verbal consent he previously gave us to search his desktop computer. Eastman signed the form. I also signed the form and noted the date and time, which was November 10, 2012 at 7:40 p.m. A copy of the form is attached hereto as Exhibit A-4.

25. As I indicated above, Detective Terni was present with me and Eastman the entire time. Eastman was never placed in handcuffs and he was calm and cooperative throughout the interview.

26. We did not arrest Eastman following the interview. Before arresting and charging him, I wanted to perform a forensic examination of Eastman's computer to see if evidence from

the computer corroborated his statements. In my report I indicated that following the interview Eastman "was allowed" to leave the station. My choice of words, however, was not meant to indicate that Eastman was not allowed to leave at any point before then. Rather, I simply meant that I was not placing him under arrest following the interview.

27. Detective Terni and I drove Eastman back to his residence. Eastman sat in the back seat of the car and he was not placed in handcuffs during the drive. Upon arrival at his residence, Eastman got out of the car. Detective Terni and I did not get out of the car. We then drove away.

28. To this day, I am not aware of Eastman ever making a request to have his computer returned to him.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on March 25, 2016
Waterbury, Connecticut

Detective Peter Morgan
Waterbury Police Department

# EXHIBIT A-1

## ADVISEMENT OF RIGHTS   12-6688

The Constitution requires that I advise you of your rights:

1. You have the right to remain silent. If you talk to any police officer, anything you say can and will be used against you in court. ___

2. You have the right to consult with an attorney before you are questioned, and you may have him/her with you during questioning. ___

3. If you cannot afford a lawyer, one will be appointed for you, if you wish, before any questioning. ___

4. If you wish to answer questions, you can stop answering at any time. ___

5. You may stop answering at any time if you wish to talk to an attorney, and you may have him/her with you during any questioning. ___

6. If you are a juvenile (under age 16), a parent or guardian must be present during any admission, confession or statement (written or oral). ___

Do you understand these rights? (Yes)/ No ___

Do you wish to give up these rights and answer my questions? (Yes)/ No ___

Signature: _____

Date: 11/10/12    Time: 1855 hrs

Officer's Signature: _____   ID# 522

# EXHIBIT A-2

Waterbury Police Department
Waterbury, Connecticut
Standard Form Number P-07
Revised 10/20/08

# Waterbury Police Department
## Voluntary Statement Rights Form

Case Number: <u>2012-066882</u>

The Constitution requires that I inform you of your rights:

You have the right to remain silent. If you talk to any police officer, anything you say can and will be used against you in court. ( )

You have a right to consult with a lawyer before you are questioned, and may have him/her with you during questioning. ( )

If you can not afford a lawyer, one will be appointed for you, if you wish, before any questioning. ( )

If you wish to answer questions, you have the right to stop answering at any time. ( )

You may stop answering at any time if you wish to talk to a lawyer, and may have him/her with you during any further questioning. ( )

If you are a juvenile (under 16), a parent or guardian must be present during any admission, confession, or statement, written or oral. ( )

## WAIVER

Do you understand these rights? Yes ( ) No ( )
Are you willing to waive (give up) these rights and answer my questions? Yes ( ) No ( )

_____   _____   __11/10/12__   __1932hrs__
Officer Signature & ID Number        Signature                    Date            Time

La Constitucion de los Estados Unidos requiere que se le informe de sus derechos:

Tiene derecho de permanecer en silencio. Si le habla a cualquier oficial de la policia, cualquier cosa que le diga puede ser usado en corte en su contra. ( )

Tiene derecho de consultar con un abogado antes de ser interrogado y a que el abogado este presente durante el interrogatorio. ( )

Si no tiene dinero para pagar un abogado, la corte le proveera uno, si asi lo desca, antes de cualquir interrogatorio. ( )

Si desea contestar preguntas, tiene derecho de dejar de contestar las preguntas en cualquier momento. ( )

Si desea hablar con un abogado, puede dejar de contestar a las preguntas en cuelquier momento, y el abogado puede permanecer con usted durante el resto del interogatorio. ( )

Si usted es un menor, (menor de 16 anos) uno de sus padres o un guardian tiene que estar presente durante alguna admision, confesion, o declaracion, escrita o oral, que usted haga. ( )

## RENUNCIA DE DERECHOS

Entiende estos derechos? Si ( ) No ( )
Esta dispuesto a renunciar estos derechos y contestar mis preguntas? Si ( ) No ( )

_____   _____   _____   _____
Officer Signature & ID Number        Signatura                    Fecha        Hora del Dia

# EXHIBIT A-3

Waterbury Police Department
Waterbury, Connecticut
Standard Form Number P-06
Revised 09/06



# Waterbury Police Department
## Voluntary Statement

Start Date: **11/10/2012** Time: **07:34 PM**        CASE No.# : **2012-066882**

PLACE STATEMENT TAKEN: **255 East Main St. Waterbury, CT**

I, the undersigned, **John   Eastman** of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Waterbury, CT**, Tel.# ▮▮▮▮▮▮▮, being **45** years of age, born in **New Haven, CT** on ▮▮▮/**1967**, do hereby make the following statement to **Peter Morgan**, having first been identified as **a Waterbury Police Detective**.

John Eastman of ▮▮▮▮▮▮▮▮▮▮▮ D.O.B. ▮▮/67, am giving this statement under my own free will. I can read and write English, and have completed ten years of schooling and have a GED. Det. Morgan has advised me of my Constitutional Rights and I signed and initialed a card and form agreeing to waive those Rights and speak to him and to give this statement. I have not been threatened to give this statement, nor have I been promised anything in return for it. I know the contents of this statement can be used in court.

I live with my mother at our apartment and have my own bedroom in the apartment. I have an HP desktop computer in my bedroom that I use to go onto the Internet. I have had this computer for about 5 months, and it has been in my bedroom the entire time. I also have a web cam hooked up to the computer that I use to chat with people on the Internet. I had a laptop computer before that, but it stopped working and I threw it out and bought the one I have now.

I use the Internet to chat with girls on different web sites. I use the program Skype to chat with girls because you can use the web cam to video chat and see them while chatting. I am sexually attracted to very petite girls. I like girls that are like 14 years old and have started to develop. Because of this, I made a couple of screen names on Skype that were the names of members of the singing group One Direction. I used their names because I know the names would attract teenage girls to contact me. One of the screen names I used is "harry.styles888". I also have an email address "stylesharry446@gmail.com". I log on to Skype with the screen name and just wait for girls to contact me. When a girl contacts me, I start chatting with them. If they want to see me on the web cam, I will have a You Tube video of the singer from some old video footage ready to play and then point my web cam at the computer screen so the girl thinks that she is talking to the real singer. I will then try talking to the girl in a sexual manner to see if she will talk back. I will ask if the girl will pose in the sexual position doggy style with their ass facing the camera. I ask them to do this because I think it is the best pose to see a girl. My hope is that the girl will show me herself on camera and then pose in a sexual manner, or perform some kind of sex act for me to see. I know that I have chatted with some girls that were between like 12 and 15 years old, we chatted about sex and they posed in a sexual

---

The facts herein contained are true and correct, and knowing that any false statement is subject to prosecution under the penalties of Connecticut State Statute 53a-157b, I have given the above statement of my own free will without threat or promise.

Signed _____
Signature of Person giving voluntary statement

Witness: Det ▮▮▮▮▮▮▮ #570    Supervisor ▮▮▮▮▮▮▮▮▮    11-10-12
                                Subscribed and Sworn to before me    Date

Finished Date: **11102012** Time: **08:43 PM**

Page 1 of 2

**COPY**

Waterbury Police Department  
Waterbury, Connecticut  
Standard Form Number P-06  
Revised 09/06  



## Waterbury Police Department
## Voluntary Statement

Start Date: **11/10/2012** Time: **07:34 PM**

CASE No.# : **2012-066882**

manner or performed a sex act so I could watch on the web cam. Anytime that I can get the girls to perform any sex acts, I will masturbate until I ejaculate.

While we were discussing the investigation, Det. Morgan informed me about a couple of girls from Vermont that had complained to their parents about me asking them to pose doggy style on Skype. I do not remember these girls because I talk to so many girls and these girls did not pose for me.

I also go to other porn sites called Motherless.com and Jailbait.

Today, detectives came to my house and told me about an investigation into what I had been doing on Skype with young girls. I wanted to fully cooperate, so I agreed to go to the Detective Bureau to speak about it and give this statement. I also signed a Consent to Search form allowing Det. Morgan to take the desktop computer from my bedroom and do a forensic examination on it to look for the information from my Skype chats.

This statement is the truth.

---

The facts herein contained are true and correct, and knowing that any false statement is subject to prosecution under the penalties of Connecticut State Statute 53a-157b, I have given the above statement of my own free will without threat or promise.

Signed _____  
Signature of Person giving voluntary statement

Witness: Det _____, #570   Supervisor LT. _____   11-10-12  
Subscribed and Sworn to before me    Date

Finished Date: **11102012** Time: **08:43 PM**

Page 2 of 2

**COPY**

# EXHIBIT A-4

Waterbury Police Department
Waterbury, Connecticut
Standard Form Number P-20
Revised 04/08

# Waterbury Police Department
## Consent to Search Form

CASE NUMBER: 12-66882   TYPE OF INCIDENT: Offense Against Children

The Waterbury Police Department requests your permission to search/obtain HP desktop Computer

which is located at: 157 Congress Ave. 3rd Floor Wtby, CT

Under existing circumstances, the law requires that the Waterbury Police Department either make the search on authority of a Search Warrant or, in the absence of a Search Warrant, that the Waterbury Police Department conduct the search with your voluntary consent. The Waterbury Police Department wants to inform you that you have the right to require that no search be conducted without a search warrant, but you may also waive that right, if you so desire, by giving the Waterbury Police Department your permission to conduct the search. In the event that items of evidence are collected, said items may be subject to forensic analysis.

I have read and understood the above disclosure: JE (initial of person giving consent)

Do you freely and voluntarily give permission to the Waterbury Police Department to search/obtain: HP desktop computer,
which is located at: 157 Congress Ave. 3rd Floor Wtby, CT ?

☒ Yes   ☐ No   JE (initial of person)

Have any promises been made to you, or have you been pressured or coerced to consent to this search?

☐ Yes   ☒ No   JE (initial of person)

Signature of Person Giving Consent: John Smith
Printed Name of Person Giving Consent: John P. Eastman
DATE: 11/10/12   TIME: 7:40 pm   LOCATION: 255 E. Main St. Wtby

WITNESSES OR OFFICERS: Det. Phelan #502   PARENT/LEGAL GUARDIAN: