SCANNED at
and Emailed
4/18/17 by ICF . 15 pages
date        initials MPSO

UNITED STATES OF AMERICA : NO. 3:16-cr-0006(MPS)

v.                                  :

JOHN EASTMAN                        : APRIL 14, 2017


## MOTION TO DISMISS COUNSEL
## AND WITHDRAW GUILTY PLEA

NOW COMES John Eastman, sole defendant in the above

referenced action.

I. BACKGROUND

In the criminal matter before this court, defendant John

Eastman (Mr. Eastman) has been consecutively represented by

Kelly M. Barrett of the Federal Defenders Office, and Moira

Buckley, Esq. (Buckley). On August 17, 2016, Mr. Eastman

requested and was granted dismissal of counsel Kelly M. Barrett

on grounds of irreconcilable differences. Approximately one week later, he was granted representation of Buckley. Since that time, it has become evident that Buckley has not provided, nor intends to provide, adequate defense to the charges filed against Mr. Eastman. Furthermore, it is Mr. Eastman's firm belief that Buckley's sole motivation has been to push him toward signing a plea agreement.

After much interpersonal conflict and ideological disagreement between Buckley and Mr. Eastman, on March 1, 2017, Buckley offered Mr. Eastman a plea arrangement, the terms of which were drafted in collaboration with the prosecution, absent any input or direction by Mr. Eastman. Suffering ineffective assistance of counsel, Mr. Eastman succumbed to pressures by Buckley and prosecution to

accept the plea arrangement. At no time was Mr. Eastman

provided the information necessary to arrive at an informed decision,

and when he requested information, Buckley consistently assumed

an offensive and dismissive manner, such that Mr. Eastman felt

unrepresented and powerless against the state's will.

II. ARGUMENTS

From the time of appointment, Buckley has been a disruptive

and aggravating element in the defense strategy of Mr. Eastman.

This is counter to what the lay person rightly expects of a

defense attorney. Mr. Eastman understands that effective

representation does not mean only that his attorney should appear

in court and speak his or her mind, or that his attorney should

rush to assemble and present a plea arrangement, rather, that

his attorney would be interested in discovering all evidence, especially that which might exonerate him; that his attorney would listen to and validate his concerns; and importantly that his attorney, as an extension of himself in court, would do and speak in accordance with his decisions. Buckley did not meet these basic expectations. While it is a given that the law functions within the bounds of interpretation, what is reasonable to the average person is a crucial standard. Lacking the knowledge of a trained legal expert, and access to any legal resources, Mr. Eastman must rely on this standard to judge his level of representation.

Mr. Eastman asserts that a precept of the justice system -- and indeed a validator of its authority -- is that all defendants subject to its jurisdiction must have their interests consistently and

competently represented. Without such a check, the massive power differential favoring the state, would run roughshod over a defendant's rights. But failures of this rule need not be total. The State's power is everpresent, while the ability of the lone defendant to resist is transient. Any time the defendant's representation falters, the defendant is immediately breach, and subject to the full force wielded by the state. For that time, he or she becomes defenseless. Whether the failure of counsel is major or minor, an unremedied failure is nonetheless a deprivation of the defendant's right to consistent and competent representation.

In her practice with Mr. Eastman, Buckley displayed clear failures in this manner. That Buckley suggests discovery was complete, or that she purports to have investigated some aspects

of the case is irrelevant. The fact remains that neither
Buckley, nor expert retained by Buckley, did effort to
investigate the claims Mr. Eastman indicated. That Mr. Eastman's
main concerns center on violations of fundamental investigative
procedure -- namely, chain of custody, and an unassailable fourth
amendment violation by the Waterbury police detectives -- should
have made these issues a focus of Buckley's attention. That the
claims, among others, are supported by evidence, should have made
them central to Buckley's proposed defense. Instead, Mr. Eastman's
multiple presentations of the evidence to Buckley were refused, and
his ideas scorned as "conspiracy theories." It is not speculative to
classify such behavior by a defense attorney as unprofessional, and
for it, Mr. Eastman's trust in the consistency and competency of

his representation was eroded to a critical point.

Unfortunately, Buckley's unprofessional behavior did not manifest solely with her client. In the month of February 2017, and during the first week of March 2017, Buckley was in contact with Mr. Eastman's mother. Mrs. Eastman was acting as both a known point of contact, and a resource to help mitigate Buckley's evident dereliction of responsibility. During conversations between Buckley and Mrs. Eastman, Buckley refused to let Mrs. Eastman finish her sentences and would not discuss Mr. Eastman's relayed request for information relevant to discovery. When Mrs. Eastman expressed frustration with Buckley's poor attitude, Buckley verbally assaulted her for questioning her professional competency and her interest in Mr. Eastman's defense. Again, Buckley refused to address Mr.

Eastman's needs, and in doing so, further removed herself from the

role of competent representation.

Whether or not it is clear to the court that Buckley utterly

failed as competent representation, the zeal with which she pursued

the plea arrangement is evident. On February 28, 2017, Mr.

Eastman was instructed by Buckley that he would have to make

an immediate decision on the plea agreement -- prior to seeing it

or knowledge of any of its terms or provisions. At this point, accosted

by statements by Buckley such as "you're going to lose", and "the

jury will automatically convict you", the plea arrangement seemed to

be an inevitability rather than an option. On March 1, 2017,

Buckley presented a draft of the plea arrangement to Mr. Eastman.

On March 2, 2017 he was directed to sign.

It should be noted that, by their nature, plea deals subvert justice and responsibility. The court speaks of the responsibility Mr. Eastman must take for his crimes, as fervently and consistently as did Buckley, yet both refuse to acknowledge that responsibility must also apply to the system itself. For example, when the police violate established laws, they must not be granted immunity simply because the accused is charged with a crime especially distasteful to society. As always, in no way is it a function of justice to "make an example of" such defendants. It is also not the purpose of the court to deny the defendant due rights for expectations of efficiency, accountability, remorse, or other such collective desire. That Buckley would restrain Mr. Eastman from charging the system with these failures is upsetting. That Buckley would push Mr. Eastman

9

into a plea arrangement that allows these failures to pass unaccounted is disturbing.

The ultimate responsibility of counsel is to mitigate damage to his or her client. The accountability standard continues in that the crime Mr. Eastman is charged with actually involves a person of legal age (in Washington and Connecticut). This is a crime of technicality. Typically Buckley was not interested in pursuing this fact, instead choosing to act as moralist, repeatedly insisting that Mr. Eastman sign the plea agreement, as if that was the only way for him to demonstrate accountability. For the record, Mr. Eastman has always been willing to accept responsibility for his actions, right or wrong. What he is not willing to do is be villified as a monstrous predator -- this label does not apply to him, nor is it exemplified by his actions.

Importantly, he will not tacitly accept debasing of his character, especially when rendered by his own defense counsel in the form of a plea arrangement.

Presented as such, the plea arrangement is already offensive and unacceptable. But aforementioned, the pressures upon the effectively unrepresented are immense. It is no mystery why a defendant might accept a plea deal contrary to his wishes. On February 28, 2017, Mr. Eastman, for one, was presented with a wealth of evidence supposedly attributed to his online activities. He was then assured that a jury would convict him based on the evidence, and that he'd receive a substantially longer sentence, and stiffer incarcerative penalties for his refusal to accept responsibility for his crimes—as if availing oneself of the constitutionally protected right to a

trial by jury is somehow an affront to the state's opinions.

As failures of representation need not be total to be devastating

to a defendant, threats need not be direct. Upon consideration

of this truth, it becomes curious to Mr. Eastman that the

court would subsequently ask him if he was coerced or threatened

into signing the plea arrangement. This disclaimer of the court is a

thinly veiled act of validation. Given that Buckley's attitude and

opinions mirrored the prosecutions, Mr. Eastman felt defenseless,

that he had no choice but to answer to the court's satisfaction,

lest he be subject to the punishments that ride his right to

trial by jury.

III. CONCLUSIONS

Buckley has filed that she wishes to be removed as

counsel for Mr. Eastman. Buckley also informed the court that she will soon be in the employ of the Federal Defenders Office, which has previously been excused as defense from Mr. Eastman's case. This presents a clear conflict of interest. Combined with Buckley's unprofessional behavior and unwillingness to assist in Mr. Eastman's defense strategy, Mr. Eastman cannot rely on any advice previously tendered by Buckley regarding the plea arrangement, or his legal standing. Likewise, he cannot accept or rely on her representation in any pending suppression appeals.

Regarding that provision of the plea arrangement, Mr. Eastman wishes the court to understand how serious was the disservice done to him by Buckley. As evidence, Mr. Eastman offers his willingness to sacrifice, if necessary, the hereto unprecedented appeal of

a suppression hearing, so that Buckley may be dismissed and he may continue with proper representation at his side.

Per the direction of the Honorable Michael P. Shea, Mr. Eastman has herein presented his arguments, based on ineffective assistance of counsel, for Moira L. Buckley, Esq. to be dismissed as his counsel and new counsel to be appointed, and for his plea to be changed to <u>not guilty</u>. Furthermore and for the same causes, he necessarily requests that he be released without prejudice from any obligations or provisions of the plea agreement drafted by Buckley and the prosecution for case No. 3:16-cr-006 (mps)

Accordingly, the undersigned defendant respectfully requests that the court grant his motion, in the interest of justice.

BY: _John Eastman_

John Eastman #181388
1106 North Avenue
Bridgeport, CT, 06604

14

## CERTIFICATION OF SERVICE

I hereby certify that on April ___ 2017, the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

_____ /s/ _____
John T. Eastman

15