UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | No. 3:16-CR-00006 (MPS) |
|---|---|
| v. | |
| JOHN EASTMAN | |

**RULING ON MOTION TO WITHDRAW GUITY PLEA AND MOTION TO WITHDRAW AS COUNSEL**

I.  **Introduction**

On March 31, 2017, Mr. Eastman's counsel, Attorney Moira Buckley, filed a motion to withdraw as counsel. The motion indicated that Mr. Eastman had "advised counsel that he wishes to withdraw his guilty plea and to inform the Court of his decision," and that "the basis of Mr. Eastman's motion to withdraw [his guilty plea] would implicate undersigned counsel's representation of him and could make her a witness in a hearing on any such motion." (ECF No. 105 at 1.) I held a hearing on the motion to withdraw as counsel on April 12, 2017. At the hearing, I instructed Mr. Eastman he could file a pro se motion to withdraw his guilty plea and noted that I would reserve judgment on the motion to withdraw as counsel. Mr. Eastman has filed a motion to withdraw his plea of guilty. For the reasons set forth below, I DENY the motion to withdraw the plea of guilty (ECF No. 110) and GRANT the motion to withdraw as counsel. (ECF No. 105.)

II. **Background**

A brief procedural history is set forth below.

**A.    The Indictment**

On January 7, 2016, the grand jury returned a two-count indictment, charging Mr. Eastman with coercion and enticement of minors in violation of 18 U.S.C. § 2422(b), and possession of

child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (ECF No. 28.) On February 2, 2016, Mr. Eastman was arraigned and pled not guilty to both counts. (ECF No. 32.)

**B.     The Suppression Hearing**

On January 22, 2016, Mr. Eastman moved to suppress physical evidence and certain incriminating statements he made to law enforcement officers. (ECF No. 30) The physical evidence and statements arose from a 2012 investigation into Mr. Eastman's alleged crimes. Detectives went to Mr. Eastman's home and discussed their investigation with Mr. Eastman. (ECF No. 72 at 7.) Mr. Eastman gave the detectives his desktop computer and agreed to accompany them to the police station. (*Id*. at 8.) At the police station, Mr. Eastman signed a detailed written confession and acknowledgement-of-rights and consent-to-search forms. (*Id*. at 9-10.) In his motion to suppress, Mr. Eastman argued: (i) the police's search and seizure were illegal because they were conducted without consent or a warrant, and (ii) he never received a Miranda warning and the police forged his signature on his confession statement and consent-to-search and acknowledgement-of-rights forms. I held a hearing on the motion on May 31, 2016. At the hearing, the government presented three witnesses – officers Peter Morgan, David Termi, and William Fox – and the defense presented a single witness, Linda Eastman (Mr. Eastman's mother). Mr. Eastman did not testify, but he submitted an affidavit, which I considered. (*Id*. at 2.)

On August 15, 2016, I denied Mr. Eastman's motion to suppress because I found that "Mr. Eastman consented to the search and seizure and received adequate *Miranda* warnings when they were required." (*Id*.) In particular, I found that Mr. Eastman voluntarily signed a written statement setting forth "in graphic detail Mr. Eastman's use of his computer to lure underage girls into performing sexually explicit activity." (*Id*. at 9.) I also found that Mr. Eastman signed statements acknowledging that he was "repeatedly advised of his constitutional rights and consented to the

search of his computer." (*Id*. at 9-10.) I rejected as not credible Mr. Eastman's assertions that he did not consent to the entry of his apartment or the seizure of his computer, and that his signatures on the confession statement, consent-to-search, and acknowledgment-of-rights forms were forged. I found his affidavit not to be credible because, among other things, it "directly contradicted substantial evidence." (*Id*. at 11.) On these grounds, and others set forth in the ruling, I denied Mr. Eastman's motion to suppress.

### C. First Motion to Withdraw As Counsel

On August 17, 2016, two days after my ruling on the motion to suppress, Attorney Kelly Barrett of the Federal Defender's Office, who was then representing Mr. Eastman, filed a motion to withdraw as his counsel. (ECF No. 73) On August 22, 2016, I held a hearing on Attorney Barrett's motion and granted it. I also gave Mr. Eastman the following warning:

> THE COURT: Finally, and this is important, you should
> also understand that if I were to grant this motion and appoint
> a lawyer from the CJA panel to represent you and then a month or two
> down the line I get another one of these motions….
> it's likely at that point that I will begin to conclude that you are
> the one contributing to the breakdown in the relationship between
> you and your lawyers. And that is a factor that the Court of Appeal[s]
> has instructed me to consider, who's responsible for the breakdown.
> Now, on the first one, sometimes people don't get along very well. I
> understand that…But when it starts to happen repeatedly with the
> same person then the Court starts to wonder if it's that person's fault…at some
> point -- here's where this is going -- what the Court typically says,
> and what I will do in that situation, I'll say…you have your choice, you can
> either keep this lawyer or you can represent yourself. Do you understand that?
>
> MR. EASTMAN: I understand.

(ECF No. 111 at 12-13.) The same day Attorney Buckley was appointed from the CJA panel to represent Mr. Eastman.

3

### D. The Change of Plea

Following several motions to continue jury selection on the basis that the defense required additional time for a forensic computer expert to conduct a review of the computer evidence in the case -- motions which the Court granted --, and after the forensic expert completed his review, and after Mr. Eastman consulted with Attorney Buckley concerning the results of that discovery and the case more fully, Mr. Eastman, through his counsel, notified the Court of his desire to plead guilty to count one of the indictment. On March 2, 2017, Mr. Eastman appeared before me at a change of plea hearing, where he was placed under oath. Before accepting his guilty plea, I conducted an extensive inquiry to ensure Mr. Eastman was pleading guilty voluntarily, knowingly, and after due consideration with the advice of his counsel, with whom he indicated he was satisfied. I also advised Mr. Eastman of the rights he was waiving by pleading guilty and verified that he understood that he was waiving those rights. After these colloquies, Mr. Eastman indicated that he still desired to plead guilty. Thereafter, he admitted his guilt and pled guilty to count one of the indictment, and I accepted his guilty plea. He also entered into a written plea agreement with the Government.[1]

## III. Discussion

### A. The Motion to Withdraw Mr. Eastman's Guilty Plea

"The standard for withdrawing a guilty plea is stringent." *U.S. v. Rosen*, 409 F.3d 535, 546 (2d Cir. 2005)(internal quotation marks and citation omitted). A defendant may withdraw his guilty plea after the Court accepts it but before sentencing only if he "can show a fair and just

---

[1] Under the plea agreement, the Government will move to dismiss count two of the indictment at sentencing. (ECF No. 101 at 8.) In the plea agreement, Mr. Eastman expressly reserved his right to appeal my August 15, 2016 ruling on his motion to suppress. (*Id.* at 1.)

reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "The court has [discretion to allow a defendant to withdraw his guilty plea] where the moving defendant satisfies the court that there are valid reasons for withdrawal of the plea and the court concludes that those reasons outweigh any prejudice to the government and the strong societal interest in the finality of guilty pleas." *Rosen*, 409 F.3d at 546. A defendant "bears the burden of satisfying the trial judge that there are valid grounds for the withdrawal." *U.S. v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992)(internal quotation marks and citation omitted).

As far as I can discern from Mr. Eastman's motion, he asserts two principal grounds to withdraw his plea – (i) he was "pressure[d] by [Attorney] Buckley and [the] prosecution to accept the plea agreement" and was not "provided the information necessary to arrive at an informed decision" (ECF No. 110 at 2-3), and (ii) he had "ineffective assistance of counsel." (*Id.* at 2) I examine each of these bases below. I also consider whether any other "fair and just" reason exists for granting Mr. Eastman's motion, including "(1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea." *Rosen*, 409 F.3d at 546 (internal quotation marks and citation omitted).

1. Allegations of Coercion

First, Mr. Eastman alleges that he was coerced into pleading guilty by both the Government and his attorney, and that he was not given enough information to reach an informed decision. "Where a motion to withdraw a plea is premised on involuntariness, the defendant must raise a significant question about the voluntariness of the original plea." *U.S. v. Doe*, 537 F.3d 204, 211 (2d Cir. 2008)(internal quotation marks and citations omitted). No such

5

question is raised where "[a] defendant's bald statements [] simply contradict what he said at his plea allocution." *Id.*; *see also Adames v. U.S.*, 171 F.3d 728, 732 (2d Cir. 1999)("A criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity, and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." (citations and internal quotation marks omitted)). But bald statements are all Mr. Eastman relies on. Mr. Eastman claims – for the first time – that he was "pressured" into the plea agreement. (ECF No. 110 at 2.) He bolsters that claim with other conclusory statements – Attorney Buckley "push[ed] [him] into a plea agreement", (*Id.* at 10), "Mr. Eastman felt defenseless", (*Id.* at 12), "[t]he plea agreement seemed to be an inevitability rather than an option", (*Id.* at 8), "[a]t no time was Mr. Eastman provided the information necessary to arrive at an informed decision", (*Id.* at 3) – purporting to show he had "no choice" but to plead guilty. (*Id.* at 12.) As shown below, these statements contradict those he made while under oath at the change of plea hearing. The change of plea hearing began with the following introduction from the Court:

> THE COURT: The first thing I want to tell you is to take your time.
> The decisions you have to make today are important and
> it's important that you completely understand what's going on in the courtroom
> and what you're doing before you make those decisions. If you have any problems or
> questions during this proceeding at any time, please let me know or, if you need
> time to speak privately with your lawyer, Attorney Buckley, please let me know that and
> I will give you all the time that you need. Do you understand?
>
> [MR. EASTMAN]: Yes, sir.

(ECF No. 112 at 2-3.) I inquired whether defense counsel had adequate time to discuss the change of plea with Mr. Eastman.

> THE COURT: We spoke on the phone the other day just to schedule this hearing.
> I don't know whether you were able to meet with your client ahead of time.

> MS. BUCKLEY: I was able to meet him yesterday, and then I saw him again briefly this morning - - not this morning, this afternoon. But I was able to meet with him down in Bridgeport yesterday.
>
> THE COURT: Very well. Thank you.
> ….
>
> THE COURT: Attorney Buckley, from your perspective, have you had enough time and information to allow for meaningful discussion with the Defendant about the case?
>
> MS. BUCKLEY: Yes, Your Honor.

(ECF No. 112 at 6-7.)

Thereafter, Mr. Eastman, who was placed under oath, made the following sworn statements in response to my questions about whether he had had enough time and information to consider the case:

> THE COURT: Mr. Eastman, from your perspective, have you had enough opportunity and enough information to discuss the case with your lawyer?
>
> [MR. EASTMAN]: Yes.
>
> ….
>
> THE COURT: Mr. Eastman, did you receive a copy of the Indictment in this case?
>
> [MR. EASTMAN]: Yes.
>
> THE COURT: And you've read it?
>
> [MR. EASTMAN]: Yes.
>
> THE COURT: And you've had -- have you had a chance to consult with your lawyer about the charges?
>
> [MR. EASTMAN]: Yes, sir.
>
> THE COURT: I'm sorry?
>
> [MR. EASTMAN]: Yes, Your Honor.
>
> THE COURT: Do you understand the charges against you?

> [MR. EASTMAN]: Yes.
>
> ….
>
> THE COURT: Mr. Eastman, have you had a chance to read the Plea Agreement?
>
> [MR. EASTMAN]: Yes, Your Honor.
>
> THE COURT: Have you had a chance and enough opportunity to discuss it with your lawyer?
>
> [MR. EASTMAN]: Yes.
>
> THE COURT: Do you understand the Plea Agreement?
>
> [MR. EASTMAN]: Yes.
>
> THE COURT: Attorney Buckley, are you confident that [] Mr. Eastman understands the terms of the Plea Agreement?
>
> MS. BUCKLEY: I am, Your Honor.
>
> THE COURT: And you've had a chance - - enough time to review it with him?
>
> MS. BUCKLEY: I have, Your Honor.

(ECF No. 112 at 6-7, 12-13.) I also asked Mr. Eastman questions to determine whether his guilty plea was voluntary.

> THE COURT: And other than the promises contained in the written [plea] agreement, has anyone made any other promises or statements to you that have caused you to plead guilty?
>
> [MR. EASTMAN]: No, sir.
>
> THE COURT: Has anyone made any threats against you to get you to plead guilty?
>
> [MR. EASTMAN]: No.
>
> THE COURT: Is anyone forcing you or intimidating you into pleading guilty?
>
> [MR. EASTMAN]: No.

THE COURT: Are you pleading guilty today of your own free will and because you are, in fact, guilty?

[MR. EASTMAN]: Yes, Your Honor.

THE COURT: Has anyone made any promises to you as to what your sentence will be?

[MR. EASTMAN]: No.

(ECF No. 112 at 21-22.) Mr. Eastman's other statements, that his plea was entered into knowingly with an understanding of the rights he was waiving after consultation with his lawyer, further undermine his argument that his plea was the product of coercion.

> THE COURT: Attorney Buckley, have you discussed with Mr. Eastman the collateral consequences of pleading guilty to this charge?
>
> MS. BUCKLEY: I have, Your Honor.
>
> THE COURT: Mr. Eastman, do you understand all of the rights and all of the possible consequences of a guilty plea that I have reviewed with you?
>
> [MR. EASTMAN]: Yes, Your Honor.
>
> THE COURT: Do you have any questions for me or Attorney Buckley at this time?
>
> [MR. EASTMAN]: No, Your Honor.
>
> THE COURT: Are you willing to give up your right to the trial and the other rights that I discussed?
>
> [MR. EASTMAN]: Yes, Your Honor.
>
> ….
>
> THE COURT: Do you understand the Plea Agreement?
>
> [MR. EASTMAN]: Yes, Your Honor.
>
> THE COURT: Mr. Eastman, if you're still ready and willing to sign the Plea Agreement, you should do that now.

> [THE GOVERNMENT]: Your Honor, the Plea Agreement has been signed by both parties.

(ECF No. 112 at 11-13.) Finally, Mr. Eastman unequivocally admitted his guilt at the hearing:

> THE COURT: Mr. Eastman, I have a couple of questions for you. In November 2012, you were living in Waterbury, am I right?
>
> [MR. EASTMAN]: Yes. Yes, sir.
>
> THE COURT: And at the time you were living in an apartment with your mother, if I'm not mistaken?
>
> [MR. EASTMAN]: Yes, Your Honor.
>
> THE COURT: And around that time you had a computer in your bedroom, an HP computer?
>
> [MR. EASTMAN]: Yes, sir.
>
> THE COURT: And Skype was installed on the computer?
>
> [MR. EASTMAN]: Yes, Your Honor.
>
> THE COURT: All right. And is it true that on November 6, 2012, or thereabouts, you used Skype on that computer to communicate with a 16 year old female?
>
> [MR. EASTMAN]: Yes, Your Honor.
> ….
>
> THE COURT: -- at the time that you were communicating with this person on Skype, you were physically in Connecticut and she was physically in Seattle, Washington?
>
> [MR. EASTMAN]: Yes, Your Honor.
>
> THE COURT: And you were using a screen name that used – that was Justin Bieber or something like that, is that right?
>
> [MR. EASTMAN]: Yes, Your Honor.
>
> THE COURT: And at the time this was a situation where this female's camera associated with her computer, which is called a webcam, was activated, is that

true?

[MR. EASTMAN]: Yes, Your Honor.

THE COURT: And, in particular, you asked her to pull down her[] underwear and pose so that you could see her genitals, is that true?

[MR. EASTMAN]: Yes.

THE COURT: And she did that?

[MR. EASTMAN]: Yes, Your Honor.

THE COURT: And you used a function on Skype to essentially take a picture of her while she was doing that, is that true?

[MR. EASTMAN]: Yes, Your Honor.

THE COURT: And you saved that on your computer?

[MR. EASTMAN]: Yes, Your Honor.

THE COURT: You understood at the time that she was less than 18 years old?

[MR. EASTMAN]: Yes, Your Honor.

….

THE COURT: Let me try it again. Is it true that you did this voluntarily?

[MR. EASTMAN]: Yes, Your Honor.

THE COURT: And no one forced you to do it, is that correct?

[MR. EASTMAN]: Correct.

THE COURT: Would counsel have me inquire further?

[GOVERNMENT]: No, Your Honor.

THE COURT: Mr. Eastman, if you're still willing and ready to plead guilty now is the time. You should stand for that purpose.

(ECF No. 112 at 33-36.) Thereafter, Mr. Eastman pled guilty to count one of the

indictment.

11

Mr. Eastman was provided ample opportunity at the hearing to raise any concerns or questions about the plea. He made no mention of any pressure or other concern. He manifested no doubts, hesitation, or lack of understanding as to what he was doing or the consequences of his guilty plea. *U.S. v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997)(defendant "was given every chance by the district court to raise any concerns, questions or anxieties about the plea" and therefore, considering that defendant's "unequivocal admissions under oath contradict[ed] his unsupported assertions of pressure" by his attorney, district court did not abuse its discretion in denying his motion to withdraw his plea); *United States v. Morales,* 1 F.Supp.2d 389, 392 (S.D.N.Y. 1998)(rejecting defendant's argument that his attorney coerced him into pleading guilty because the allegation was "contradicted by Morales' own sworn allocution, in which, in response to the Court's full explanation of the meaning of threats and coercion, Morales affirmed that he had not been threatened or coerced into pleading guilty or anything like that")(internal quotation marks and citations omitted); *Jimenez v. United States,* No. 96–CIV. 8679, 1998 WL 184339, at *5 (S.D.N.Y. Apr. 2, 1998)(rejecting the defendant's argument that the Government coerced him into pleading guilty by based on "[u]nsupported allegations that merely contradict[ed] earlier statements made under oath at a plea allocution…").

In short, Mr. Eastman's "assertions that his plea was involuntary are belied by his own statements, made under oath during his plea allocution, representations that his plea was knowing and voluntary and was supported by a factual basis, and confirming that he understood the specific rights he was giving up by pleading guilty." *U.S. v. Scott*, 569

Fed. Appx. 55, 56 (2d Cir. 2014)(summary order). Therefore I reject his first ground for withdrawing his plea.[2]

2. Alleged Ineffective Assistance of Counsel

Mr. Eastman's second ground for withdrawing his plea fares no better than his first. He claims that he "suffer[ed] ineffective assistance of counsel." (ECF No. 110 at 2.) According to Mr. Eastman, Attorney Buckley "did not meet basic expectations" as she did not "listen to and validate his concerns; and importantly that [she]…[would not] do and speak in accordance with his decisions." (*Id*. at 4.) Specifically, he claims she made no "effort to investigate the claims Mr. Eastman indicated", namely, the "chain of custody, and…fourth amendment violation by the Waterbury police detectives", which should have been the "focus of [her] attention" and "central to [her] proposed defense." (*Id*. at 6.) And that she "utterly failed as competent representation" because she "pursued the plea agreement." (*Id*. at 8.)

A defendant moving to withdraw a guilty plea on the basis of ineffective assistance of counsel must show that "counsel's deficient performance undermines the voluntary and intelligent nature of defendant's decision to plead guilty." *U.S. v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005). To advance an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that "(1) counsel's performance

---

[2] To the extent that Mr. Eastman seeks to argue that Attorney Buckley coerced him because she recommended he plead guilty, such an argument is without merit. *U.S. v. Buckles*, 843 F.2d 469, 472 (11th Cir. 1988)(noting a defendant may not withdraw his guilty plea "where his attorney, employing his best professional judgment, recommends that the defendant plead guilty."); *U.S. v. Carraballo*, S12 98 CR. 1316, 2001 WL 111284, at *5 (S.D.N.Y. Feb. 8, 2001)("The fact that Koppelman, using his professional judgment, recommended that Carraballo plead guilty, is an insufficient basis on which to find that the plea was coerced.").

13

fell below an objective standard of reasonableness, and (2) but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. (internal quotation marks and citations omitted). Mr. Eastman has not satisfied either prong.

With regard to the first prong, Mr. Eastman has failed to identify any actions taken by Attorney Buckley that fell below an objective standard of reasonableness. Mr. Eastman's complaints about Attorney Buckley are contradicted by his express statements at the plea hearing -- statements that "carry a strong presumption of verity, and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames,* 171 F.3d at 732. At the plea hearing, he stated that he was satisfied with Attorney Buckley and did not raise any concerns about her representation of him, much less the specific ones he includes in his motion.

> THE COURT: …Mr. Eastman, from your perspective, have you had enough opportunity and enough information to discuss the case with your lawyer?
>
> [MR. EASTMAN]: Yes.
>
> THE COURT: And are you satisfied to have her represent you in this proceeding?
>
> [MR. EASTMAN]: Yes, I'm satisfied.
>
> THE COURT: Is there any way in which you're not fully satisfied with her advice and representation?
>
> [MR. EASTMAN]: No.

(ECF No. 112 at 6-7); *see also U.S. v. Applebaum*, 94 CR. 209 (AGS), 1995 WL 723348, at *9 (S.D.N.Y. Dec. 7, 1995)("Defendant's claims of ineffective assistance of counsel and involuntary waiver of the right to trial are flatly contradicted by his clear statements,

made under oath, during his Rule 11 plea allocution."), *aff'd*, 101 F.3d 686 (2d Cir. 1996).

Further, Mr. Eastman's claims about Attorney Buckley's allegedly inadequate investigation are either vague or foreclosed by my ruling on the motion to suppress. Mr. Eastman provides no specifics about the alleged failure to investigate his claims about the "chain of custody." To the extent this claim relates to the investigation of the computer forensic evidence against him, he fails to provide any support for it, and the docket undermines it. The docket reveals that Attorney Buckley, on Mr. Eastman's behalf, made several motions to continue jury selection so that her retained expert could conduct a computer forensic investigation. *See, e.g.*, (ECF No. 89 at 1-2)("The defendant's expert has reviewed relevant discovery and undersigned counsel is working with AUSA Patel to arrange for him to conduct a forensic review of the computer evidence in this matter."); (ECF No. 83 at 1-2)("The extension of time is necessary so that undersigned counsel may thoroughly review the discovery and relevant materials in this matter, determine whether engagement of an expert assistance is necessary, and if so, to allow any potential expert time in which to conduct whatever evaluations or reviews may be necessary.") To the extent Mr. Eastman is complaining about his lawyer's failure to pursue the defense strategy favored by him, such a complaint is not a basis for finding that representation fell below the standard of objective reasonableness. *DeLuca v. Lord*, 77 F.3d 578, 588 & n. 3 (2d Cir. 1996)("A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.")(internal quotation marks and

citation omitted). Mr. Eastman makes no claim that Attorney Buckley lacked a "reasonable justification" for the investigative choices she made, and provides no further specification of his vague "chain of custody" claim.

Similarly unavailing is Mr. Eastman's complaint that Attorney Buckley failed to investigate an alleged "fourth amendment violation by the Waterbury police detectives", (ECF No. 110 at 6), because I have already ruled that there was no such violation as to the only Fourth Amendment issues ever identified in the case. *Holder v. Perlman*, 06 CV 5590, 2009 WL 1491160, at *6 (E.D.N.Y. May 27, 2009)(noting "because the trial court's ruling was appropriate, counsel's failure to object cannot be deemed deficient conduct under *Strickland v. Washington,* 466 U.S. 668, 687–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)…"). Attorney Buckley negotiated a plea agreement that will permit Mr. Eastman to challenge that ruling on appeal – not a concession that the U.S. Attorney's Office commonly makes in this District, in my experience. Mr. Eastman fails to identify any further action Attorney Buckley could have taken to pursue the alleged "Fourth Amendment violation," and I am unaware of any.

As for the second prong, Mr. Eastman does not argue (nor could he based on his statements at the plea hearing), much less point to specific facts, suggesting that but for Attorney Buckley's alleged errors, he would have refused to plead guilty.

Based on the foregoing, I conclude that Mr. Eastman has failed to show that he should be permitted to withdraw his guilty plea on the basis of ineffective assistance of counsel.

> 3. No Other "Fair and Just" Reasons Exist to Permit Mr. Eastman to Withdraw His Guilty Plea

I am unaware of any other "fair and just reason" to allow Mr. Eastman to withdraw his guilty plea. First, Mr. Eastman does not claim he is innocent. *Rosen*, 409

F.3d at 543 (2d Cir. 2005)( noting one factor in determining if a defendant may withdraw his plea is "whether the defendant has asserted his legal innocence")(internal quotation marks and citation omitted). In fact, his motion suggests the opposite, including statements that might themselves be incriminating:

> The accountability standard continues in that the crime Mr. Eastman is charged with actually involves a person of legal age (in Washington and Connecticut). This is a crime of technicality. Typically [,] Buckley was not interested in purusing this fact, instead choosing to act as [a] moralist, repeatedly insisting that Mr. Eastman sign the plea agreement, as if that was the only way for him to demonstrate accountability. For the record, Mr. Eastman has always been willing to accept responsibility for his actions, right or wrong. What he is not willing to do is be vilified as a monstrous predator -- this label does not apply to him, nor is it exemplified by his actions.

(ECF No. 110 at 10). In any event, as shown above, he admitted the factual basis for the charged offense at the plea hearing.

Second, four weeks and a day elapsed between Mr. Eastman's plea and his indication that he desired to withdraw his guilty plea.[3] Specifically, Mr. Eastman's motion to withdraw his guilty plea occurred shortly after his meeting with a U.S. Probation Officer, who interviewed him as part of the presentence investigation. While the delay factor does not weigh significantly in this case, it does not weigh in Mr. Eastman's favor. Courts have denied motions to withdraw guilty pleas where less time has elapsed. *U.S. v. Figueroa*, 757 F.2d 466, 475 (2d Cir. 1985)(denying motion to withdraw guilty plea where among other things the motion was made almost three weeks

---

[3] This calculation reflects the difference between the date of the change of plea hearing and the date Attorney Buckley filed her motion to withdraw as counsel, which stated Mr. Eastman's desire to withdraw his guilty plea.

17

after the defendant pled guilty); *Nunez Cordero v. United States,* 533 F.2d 723, 726 (1st Cir. 1976)(finding two weeks not prompt enough).

Third, allowing Mr. Eastman to withdraw his guilty plea would likely prejudice the Government, although this factor does not weigh heavily in the analysis either. *See U.S. v. Saft*, 558 F.2d 1073, 1083 (2d Cir. 1977)("The Government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of a guilty plea, although such prejudice may be considered by the district court in exercising its discretion."). At the April 12, 2017 hearing on the motion to withdraw as counsel, the prosecutor stated that while the Government took no position on the motion to withdraw as counsel, it would oppose any motion to withdraw the guilty plea. The trial date was postponed several times in this case, and allowing a withdrawal of the plea would further delay an ultimate resolution.

As Mr. Eastman's plea was voluntary and entered into with the advice of counsel with whom he was satisfied, and there being no other "fair and just reason" to support withdrawal of his guilty plea, it appears that Mr. Eastman's motion to withdraw his plea is the product of a "change of heart" about his plea agreement. That is not a permissible basis to withdraw his guilty plea. *Gonzalez*, 970 F.2d at 1100 ("The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea.").

### B. Motion to Withdraw As Counsel

At the plea hearing, both Attorney Buckley and Mr. Eastman indicated that the basis of their disagreement was the question of whether Mr. Eastman should seek to withdraw his guilty

plea. Mr. Eastman stated, at the hearing, that other than the disagreement about withdrawal of his guilty plea, he had no problem concerning Attorney Buckley's representation of him. In his motion to withdraw his plea, however, he makes statements about difficulties in the relationship with Attorney Buckley, some of which suggest an irreparable breakdown. Although it appears that the breakdown owes to Mr. Eastman's change of heart about his guilty plea, and thus is not the fault of counsel, I grant the motion to withdraw as counsel to give Mr. Eastman a final opportunity to start fresh with a new lawyer and thereby present the best possible defense at sentencing. (I do not grant the motion, however, on the bases set forth in counsel's motion to withdraw.) Because I find that Mr. Eastman has been the driving force behind the breakdown of his two attorney-client relationships in this case, I give him the following warning: Should he be unable or unwilling to cooperate with whomever the Clerk's Office randomly selects from the CJA list, or should the Court otherwise grant a further motion to withdraw as counsel due to a breakdown caused by Mr. Eastman, he will represent himself at the sentencing.

## IV. Conclusion

For the reasons discussed above, the Motion to Withdraw Plea of Guilty (ECF No. 110) is DENIED, and the Motion to Withdraw as Counsel (ECF No. 105) is GRANTED. The Clerk's Office is directed to select new counsel from the CJA list and to unseal only pages 12 and 13 of the (ECF No. 111) transcript of the August 22, 2016 hearing. This order does not alter other currently sealed portions of that (ECF No. 111) transcript.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
May 4, 2017