**UNITED STATES DISTRICT COURT**
**DISTRICT ON CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **NO. 3:16-CR-00006 (MPS)** |
| **V.** | : | |
| | : | |
| **JOHN EASTMAN** | : | **November 14, 2017** |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant John Eastman submits this sentencing memorandum in connection with the proceeding scheduled for November 28, 2017.  The conduct to which defendant pled guilty is clearly wrong – seriously wrong.  But "child pornography crimes fall within a spectrum [, and] the harshest penalties should be reserved for the worst crimes."  *United States v. Price*, 2012 U.S. Dist. LEXIS 38397, at *34 (C.D. Ill. Mar. 21, 2012) , *aff'd*, 2014 U.S. App. LEXIS 22996 (7th Cir. Dec. 5, 2014).  We respectfully suggest that as serious as the misconduct was here, it does not involve misconduct that would justify the harshest penalties that a Court may order.  In summary, the harshest sentences should be reserved for child pornography producers who are present with and physically abuse their victims, produce particularly disturbing images involving acts with other persons or accompanied by violence, and who distribute the images widely.  None of those aggravating factors is present here.

One question that we will try to answer is why did this happen?  A related question is to what degree can we be assured that something like this will not happen again?  We recognize that these are not the only questions that must be answered, and that all of the § 3553(a) factors

1

must be considered.  But they do appear relevant to the issues before the Court, and we hope to offer some perspective.

The amount of time that John Eastman is facing is very substantial.  Admittedly, his apparent lack of present insight and past involvement with the law make the issues more complex and perhaps less certain.  But as is the case with almost everything, Eastman's lack of insight and his past are not entirely the product of willful or deliberate choices.  Rather, they are products of numbingly repetitive trauma and abuse in his early years.  In the words of the psychiatric report by Dr. Karsten Heil of the Yale School of Medicine, Law and Psychiatry Division (provided to the Probation Office on November 13, 2017 and expected to be provided to the Court in a supplement to the PSR), "[t]hese developmental traumata [described in the report] have likely negatively skewed Mr. Eastman's life trajectory towards dysfunction in multiple domains of social functioning, including his adherence to social norms."  (Heil Report at 17).  Although this does not change the fact that the misconduct occurred, perhaps it does offer some perspective.

The issue confronting the Court, as in any sentencing, in what sentence is sufficient but not greater than necessary, 18 U.S.C. § 3553(a), to punish Eastman – and also to make it less likely that he will engage in future misconduct.  There are two choices: a sentence of incarceration that effectively removes him from society for all or nearly all the rest of his life; or a sentence that includes some significant incarceration (at least ten years) and mandates a vigorous attempt at trying to repair and rehabilitate him.  We would suggest that the latter presents the alternative closer to the principles of the purposes of sentencing.

2

**Governing Principles and the Parsimony Clause of § 3553(a)**

Judge Chin has observed that for district judges "[t]here is no burden more onerous than imposing sentence in criminal cases."  Chin, *Sentencing: A Role for Empathy*, 160 U. Pa. L. Rev. 1561, 1582 (2012).  This case surely carries such a burden; it presents an unusually complex number of reasons for and against particular outcomes.  But as with all sentencings, a sentencing judge must start by considering as a "lodestar the parsimony clause of 18 U.S.C. § 3553(a), which directs sentencing courts to 'impose a sentence sufficient, but not greater than necessary to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)."  *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013) (citing *United States v. Dorvee*, 616 F.3d 174, 183 (2d Cir. 2010)). "Those factors are, broadly speaking, proportionality, deterrence, incapacitation, and rehabilitation."  *Douglas*, 713 F.3d at 700.  "Wide latitude is afforded to sentencing courts in crafting sentences 'sufficient, but not greater than necessary' to achieve the sentencing objectives set forth by Congress."  *United States v. Stewart*, 686 F.3d 156, 173 (2d Cir. 2012); *see* 18 U.S.C. § 3553(a)(2)(A)-(B) ("[The district court] shall consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense [and] afford adequate deterrence to criminal conduct.").  "And '[n]o limitation [is permitted] on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.'"  *Stewart*, 686 F.3d at 173; *see also Pepper v. United States*, 131 S. Ct. 1229, 1236 (2011) ("sentencing judges 'exercise a wide discretion' in the types of evidence they may consider when imposing sentence and that '[h]ighly

3

relevant--if not essential--to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics'"").

Under *United States v. Booker*, 125 S. Ct. 738 (2005), and *United States v. Crosby*, 397 F.3d 102, 111 (2d Cir. 2005), the factors set forth in § 3553(a), including the United States Sentencing Guidelines, must each be considered.  But once the guidelines have been determined, a district judge "may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, USSG § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless.  See Rule 32(f)."  *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007).  Under *Booker*, "[s]ection 3553(a) remains in effect, and sets forth numerous factors that guide sentencing."  *Booker*, 125 S. Ct. at 766.  "[A] judge is not prohibited from including in her consideration [of the factors in § 3553(a)] the judge's own sense of what is a fair and just sentence under all the circumstances. That is the historic role of sentencing judges."  *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006); *see United States v. Cavera*, 550 F.3d 180, 190-91 (2d Cir. 2008) (en banc).  The Court "need not impose a Guideline sentence, and may, if doing so would be reasonable, lower the sentence below the Guideline range even when a downward departure is unavailable."  *United States v. Brady*, 417 F.3d 326, 333 (2d Cir. 2005).  Starting with a general review of the applicable broad principles to be considered at sentencing outlined in *Douglas*, 713 F.3d at 700,

"proportionality, deterrence, incapacitation, and rehabilitation," it seems clear that each has some application here.

> **1. The nature and circumstances of the offense and the history and characteristics of the defendant.**

The PSR describes in detail the circumstances of the offense.  Nothing will be offered in this memorandum to minimize that misconduct.  It is serious and it is to be expected that the Court will view it seriously.  We do wish to point out three facts that several courts have concluded are important in similar cases.  First, Eastman never touched, and indeed was never in the presence of, any of the victims.  Second, the images produced did not include some of the most graphic or violent images that have been produced in other cases.  Further, there is no claim that Eastman distributed any of the images that he obtained.

As such, Eastman is among a minority of production offenders, in that he did not have physical contact with his victim, was never physically present with them, and he did not further distribute the images.  *See U.S. Sentencing Commission, Federal Child Pornography Offenses*, at 330 (2012) ("The typical offender, during the course of his production offense, had sexual contact with a prepubescent minor.  A minority of offenders, however, did not engage in any physical contact with their victims, and a subset of those offenders were never physically present with their victims because they caused the production of child pornography remotely. . . .").  *See also id.* at 263 (74 percent of offenders were present with victims and engaged in sexual contact,

and 15.5 percent were present but did not engage in sexual contact; 10.5 percent were not present).[1]

As to the history and characteristics of the defendant, Dr, Heil's report notes a number of significant events that have significantly impacted Eastman's development and personality.  His father and mother physically abused him and he witnessed substantial violence between them.  This led to his removal at age six and placement in a foster home.  He was repeatedly sexually assaulted while in foster care.  (Heil Report at 7).  When he was returned to his mother after about one year, his mother's new boyfriend repeatedly assaulted him.  By age 12, "the family's financial situation was difficult and food supplies were low." (Heil Report at 4).  When the family moved in with another boyfriend of his mother around age 12, alcohol and drug use in the house were rampant.  That boyfriend assaulted Eastman as well, breaking his nose.  Shortly thereafter, his mother simply left, abandoning Eastman and his two sisters.  "DCF records from August 1982 indicate that Mrs. Eastman had abandoned the family, and had stated to DCF that she felt John (15 years old at the time) was mature enough to supervise his twelve-year-old twin sisters." (Heil Report at 5).  They moved back in with his father, with predictable results.  Eastman began to develop hearing problems that his father failed to address.  He dropped out of school as a result, and began drinking more and more heavily.  During this time, his father required him to drive his father to brothels and wait to drive him home.  All of this before age

---

[1] Available at: https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf

eighteen.  Sexually inappropriate conduct between Eastman and others started at about this time, starting first with harassing and inappropriate phone calls.

It does appear that a straight line can be drawn between the abuse that he sustained as a child and the conduct that leads us here.  The PSR describes some of these events, and Dr. Heil's report elaborates on them and, importantly, their impact.  "During his childhood, adolescent, and young adult development he has never met many of the developmental milestones that are usually achieved during this time."  (Heil Report at 17).  The conclusion of psychological testing by Dr. Brown is instructive:

> On the personality assessment, Mr. Eastman showed evidence of a depressive personality with dependent and avoidant traits and a passive aggressive style. These characteristics are evident in his daily life in his dependence on his family and his overall limited social network and lack of social independence.   His relationships with friends and with women have been, by his report, short-lived and conflicted.  He has difficulty expressing anger directly but also has difficulty accepting responsibility for his actions. He tends to view himself as the target of the ill will of others. *Overall, the testing results suggest an arrest in his social development; that is, he has not achieved adult independence and intimacy. This has negatively impacted his self- esteem, contributed to his isolation, and led to his desire to seek affirmation and attachments in inappropriate ways.*

(Heil Report at 15-16) (emphasis added).  Dr. Brown continued:

> Mr. Eastman . . . has a history of a chaotic childhood including exposure to sex at an early age, physical and sexual abuse as a child, and emotional neglect. As an adult, he struggled to make meaningful connections with others and often spent time "out on the street" using drugs, drinking alcohol excessively, and getting into legal trouble. Although he exhibits poor insight on the severity of his childhood events and its influence on his current functioning, it is my opinion that Mr. Eastman's chaotic development did impede his social and emotional maturation.  He has not successfully achieved adult independence nor normal and intimate adult social connections.
> His sexual-social deviant behaviors demonstrate his desire for closeness and intimacy, but he is ill-equipped emotionally to engage in the mature, responsible give and take of an adult relationship.  For Mr. Eastman, relationships suitable for his age are often

7

beyond his emotional and social abilities.  His early exposure to sexual interactions were overwhelming and perceived as difficult to achieve, and this reflects how he approaches physical and emotional intimacy in adulthood. His behaviors represent his efforts in trying to meet his sexual needs; his emotional immaturity and self-centeredness contribute to his lack of self-reflection and responsibility.

(Heil Report at 16).  Dr. Heil agreed:

> While he is reasonably intelligent, his social and emotional maturity are significantly underdeveloped. He is unable to form mature adult relationships evidenced by the complete absence of any longer lasting friendships or romantic relationships.  He likely feels overwhelmed by the social demands of adult relationships which attracts him to interact with younger women of similar emotional immaturity. He finds in-person interactions with potential romantic partners more difficult, which is why he prefers – albeit at times very inappropriate – contact over the phone or online. This helps him to avoid substantive interaction and the complexity of mature, adult relationships.

(Heil Report at 17).  Together, "[t]hese developmental traumata have likely negatively skewed Mr. Eastman's life trajectory towards dysfunction in multiple domains of social functioning, including his adherence to social norms."  (Heil Report at 17).

It is perhaps appropriate here to observe that Eastman has been held in a state jail, in protective custody and without any meaningful programming, for four and one-half years.  He was not presented on these federal charges until nearly two years after his state arrest.  While admittedly some of the delay relates to Eastman's moving to withdraw his guilty plea, none of the first two years of detention and little of the past two and one-half years are due to that motion.  In *United States v. Carty*, 264 F.3d 191 (2nd Cir.2001), the Court held that pre-sentence confinement conditions may, in appropriate cases, be a permissible basis for downward departures.  "[U]nusual pretrial confinement, . . . in either length or severity of condition, can properly be considered by the sentencing court." *United States v. Sutton*, 973 F. Supp. 488, 493

(D.N.J. 1997); *see United States v. Sutton*, 2007 U.S. Dist. LEXIS 79518, at *28-*29 (D.N.J. Oct. 25, 2007) ("the overly punitive nature" of pretrial detention may be considered under § 3553, and "the logical way of acknowledging he was punished 'more than was necessary' under conditions that violate one of the goals of a reasonable sentence, is to reduce the extent of the overall sentence he must serve"); *United States v. Garcia-Morena*, 214 Fed. App'x. 134, 137 (3d Cir. 2007) (affirming downward departure in sentencing granted due to the "harsh conditions of appellant's pre-trial confinement in Passaic County Jail").  The over four years that Eastman has already served, largely in the Bridgeport Community Correctional Center, are surely among the longest in the district.  This was in part due to the decision to charge this case federally two years after his state arrest.  While we do not contend that decision was improper, the fact of the lengthy pretrial incarceration, without any meaningful programming and under protective custody, can be taken into account by the Court in arriving at a reasonable sentence.

    **2.**   **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

While the offense in this case was serious – and we do not deny that it was serious, *see United States v. Williams,* 553 U.S. 285, 307 (2008) ("[c]hild pornography harms and debases the most defenseless of our citizens") – a sentence of incarceration within the range in the plea agreement reflects the seriousness of the offense.  We do not dispute that a substantial sentence is appropriate for "offenses, at issue here, that involved attempting to entice a minor into

9

sexually explicit conduct, either with the perpetrator or for purposes of creating images, even images that the perpetrator intended to keep to himself, not to trade or sell." *United States v. Jacob*, 631 F. Supp. 1099, 1118 (N.D. Iowa 2009).

As to general deterrence, this factor is very difficult to apply, because it requires speculation about whether and what punishment will deter people from committing crimes. The consideration of general deterrence, required under § 3553(a)(2)(B), mandates that the Court consider the extent to which similarly situated potential offenders will be deterred from committing similar crimes by whatever sentence the Court imposes in this case. This is, however, an unpredictable exercise: it assumes that another person in Eastman's position considering whether to commit this particular crime weighs the consequences of getting caught and further weighs the benefits against the incremental risks of prison sentences of particular terms. However, most persons in Eastman's position likely have a lifetime of poor decisions or mental health issues, drawing into some question the extent to which general deterrence can be predicted. *United States v. Shipley*, 560 F. Supp. 2d 739, 745 (N.D. Iowa 2009) (stating that 90-month sentence for possession is sufficient for general deterrence to others "if they are capable of being deterred"). Further, it is impossible to conclude that somewhere along the range of "just" punishments there is a tipping point, a point beyond which a rational potential offender (assuming that a potential offender in this area performs that kind of a risk/benefit analysis, itself a dubious proposition) will conclude not to become involved in *that* offense due to the sentence for *this* offense. There is very little empirical data that would allow that type of determination.

10

In any event, the Court can readily conclude that any proper sentence imposed will not serve materially different purposes as it relates to general deterrence.

Specific deterrence is arguably more complicated. Eastman is 50 years old. He has very limited prospects. It is not hyperbole to suggest that if he is released at some point and then re-offends in any significant way, he would likely die in prison. Although he has been convicted of multiple offenses since becoming an adult, he has never served longer than 40 months in prison. (PSR ¶ 183) (noting that the Court may wish to consider whether a sentence within the Guidelines is more than necessary to meet the purposes of sentencing in light of Eastman's prior sentences).

Plainly a sentence must protect the public. That can be done in three ways: incapacitation, treatment, or a combination. Eastman unquestionably needs sex offender treatment, in a much more significant way than he has received it to present. Dr. Heil and Dr. Brown agree. (Heil Report at 17-18) ("Mr. Eastman would benefit from psychosocial treatment that focuses on improving his insight into his social immaturity as well as building a set of skills that would help him to navigate interpersonal and social relationships in a more appropriate way. An important component of the therapy should be to maintain sobriety, as drug and alcohol addiction are often particularly detrimental to individuals who already have an impaired ability for impulse control."). Further, "[h]e would most benefit from sex-offender-specific treatment." (Heil Report at 18). "Research has shown that participation in such specialized programs significantly reduces the risk of recidivism in sex offenders." (Heil Report at 18). Treatment

will not be easy, as Dr. Heil notes.  "In my opinion, he has the capacity to improve in the context of supervised therapy if he is willing to make an alliance and work at it."  (Heil Report at 18).

He should be given one opportunity to get that help – after a period of incarceration – while he can still try to repair his life.  While that perhaps can be provided by the Bureau of Prisons, it is likely more effectively delivered under community supervision.  State probation and parole supervision is *much* less intensive than federal probation, and as the PSR notes after release he should participate in special conditions during a period of supervised release.  (PSR ¶ 185).  Regrettably, the state probation system has been chronically underfunded, and while that may be true for the federal probation system as well, it is hard to argue against the substantially greater relative effectiveness of the federal system of supervision.

> **3.** **The kinds of sentences available.**

A sentence of incarceration of at least ten years is required, and a sentence up to life is authorized.  The plea agreement states that the government will not seek a sentence in excess of twenty years.  Supervised release of at least five years and up to life is authorized.  (PSR ¶¶ 167-170).  It should be noted that although Eastman has been held on state charges at all times since his arrest on those charges, and has not yet been in federal custody, it is expected (based on a conversation between the undersigned and his state public defender) that his state charges will be dismissed (or nolled) upon his sentencing in this case.  Accordingly, the over four years that he has been in custody will not be credited toward a state sentence, and as the undersigned understands it, he will be given credit for that time served toward this federal sentence.  18 U.S.C. § 3585(b).

4.        **Sentencing guidelines range.**

The PSR calculates the guidelines range as life.[2]  Respectfully, it appears that the PSR improperly calculates the guidelines under the record in this case, since it uses § 2G2.1(d)(1) to treat various acts as separate counts of conviction, although Eastman did not plead guilty to those other acts and no factual support for those acts was offered at the plea proceeding.

Eastman pled guilty to one count, specifically that in Count One of the indictment relating to a violation of 18 U.S.C. § 2422(b).  Although the indictment *alleged* offenses against more than one victim, the only factual support at the guilty plea proceeding concerned "minor victim #1."  *See* Stipulation of Offense Conduct; Transcript of Guilty Plea ECF No. 112 at 33-36.  The conduct underlying that victim was on or about November 6, 2012.  (PSR ¶¶ 23-25).  Although the indictment refers more broadly to other "individuals" and a broader time period, the fact remains that the facts underlying the conviction – as stipulated to by the parties and as canvassed by the Court – concerned *only* "minor victim #1.  It is not enough that the other

---

[2] The Supreme Court has held that, for the purposes of *appellate* review, the reviewing court "may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines."  *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007).  This rule may has less force in the child pornography context.  United States v. Dorvee, 616 F.3d 174, 183 (2d Cir. 2010) (:with respect to child pornography guidelines, reviewing court does not presume within-Guidelines sentence "[is] reasonable when we review it substantively").  In any event, as to district judges, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."  *Rita*, 127 S. Ct at 2465.  *See United States v. Gall,* 128 S. Ct. 586, 594 (2007); *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007) ("The district courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence.").

minors were charged in the indictment.  *United States v. Wernick*, 691 F.3d 108, 117 (2d Cir. 2012) ("[p]erhaps the government *could* have proven at trial" that conduct was within charged offense) (emphasis in original).

The PSR treats the alleged but unproven offenses against Victims 2-5 as it would for separate counts of conviction, relying on relevant conduct principles.  Section 2G2.1(d)(1) would apply to treat these unadjudicated offenses as separate counts of conviction only if they meet the standard of "relevant conduct" in § 1B1.3(a)(1)(A).   But the conduct described in ¶¶ 26-33 concerning other minor victims is not, under the language of U.S.S.G. § 1B1.3(a)(1)(A), "relevant conduct" to the offense of conviction – defining the offense of conviction as what was alleged in the indictment and what was proven (stipulated to) by the parties – in that the other conduct was not "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."  *See Wernick*, 691 F.3d at 114-15 (crimes against other children is relevant conduct to offense of conviction only if they meet standard of § 1B1.3(a)(1)(A)).  It is not enough that there is some "temporal overlap": "One criminal act does not become 'relevant' to a second act under the Guidelines by the bare fact of temporal overlap."  *Id.* at 115.  Nor are they "relevant conduct" simply because they are similar.  *Id.*  Rather, the acts relating to minors 2-5 may be considered relevant conduct only if they occur "during the commission of the offense of conviction, in preparation for that offense or in the course of attempting to avoid detection or responsibility for that offense."  *Id.* at 115.

14

In the absence of an admission by Eastman as to minors 2-5 – which did not occur – "[t]o qualify as 'relevant conduct,' the conduct must occur in the course of commission of the offense of conviction."  *Id.*  Here, the acts relating to minor 1 were discrete episodes, and any offenses relating to others were not in the course of the commission of those acts involving minor 1.

Accordingly, the discussion in ¶¶ 26-33 should be included under the heading "other evidence."  We do not deny that the information can be considered by the Court; but it results in a miscalculation of the Guidelines range.  The adjusted offense level of 34 (¶ 54) should not be subject to the grouping analysis of ¶¶ 46-85, since "the offense" of conviction did not include multiple victims, § 2G2.1(d).  Thus, the adjusted offense level for the conviction on Count One should be 34, and the guidelines range 262-327 months.

Regarding acceptance of responsibility (PSR ¶¶ 44-45, 90), although Eastman moved to withdraw his guilty plea, the fact is that his guilty plea did stand, thus saving the government resources and avoiding any need for any minors to testify at trial.  U.S.S.G. § 3A1.1 and its commentary do not mention the unsuccessful move to withdraw a plea as a reason to deny a two-level reduction for acceptance.  Further, as the PSR notes he did admit in his interview his conduct leading to the offense of conviction.  He should receive some credit – two levels – for acceptance.

## 5.    Policy Statements.

No policy statement would seem to be implicated in this case, apart from those relating to use of the current version of the guidelines, § 5G1.3(c) (which is itself labelled a "policy

statement"), those relating to plea agreements, § 6B1.2, and those relating to possible downward departures or non-Guidelines sentences as discussed elsewhere in this memorandum.

6. **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Turning to the child pornography guidelines and sentence disparities, they have been the subject of substantial criticism in that they fail to differentiate between the most serious and less serious offenders. This has been most often in the context of § 2G2.2 in possession cases. *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010); *United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017). The Second Circuit in *Dorvee* noted that § 2G2.2 "is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires." *Dorvee,* 616 F.3d at 184. But that also applies to § 2G2.1. *See United States v. Brown*, 843 F.3d 74, 89 (2d Cir. 2016) (Pooler, J., dissenting) ("much of the *Dorvee* court's criticism of the child pornography guidelines applies to the guidelines for production offenses as well"). *See also United States v. Jacob*, 631 F. Supp. 2d 1099, 1115 (N.D. Iowa 2009) ("§ 2G2.1 has some of the same flaws that [a district judge] found warranted categorical rejection of USSG § 2G2,2 [i.e,, …. it does] not distinguish between least and worst offenders and [gives] excessive weight to some otherwise proper factors.").

Section 2G2.1 was not crafted pursuant to the Sentencing Commission's nationwide empirical study of criminal sentencing, but, "[i]nstead, '[m]uch like policymaking in the area of drug trafficking, Congress has used a mix of mandatory minimum penalty increases and directives to the Commission to change sentencing policy for sex offenses.'" *United States v.*

16

*Huffstatler,* 561 F.3d 694, 696-97 (7th Cir. 2009) (quoting U.S. Sentencing Comm'n, *Fifteen*

*Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice*

*System is Achieving the Goals of Sentencing Reform* 72-73 (Nov. 2004), available at

http://www.ussc.gov/15_year/15_year_study_full.pdf).  As a result, U.S.S.G. § 2G2.1 "also

recommends enhancements for conduct present in nearly every case to which the guideline

would apply."  *Jacob*, 631 F. Supp. 2d at 1115; *see also United States v. Price*, 2012 U.S. Dist.

LEXIS 38397, at \*34 (C.D. Ill. Mar. 21, 2012) ("Additionally, Section 2G2.1 similarly applies

enhancements present in nearly every production case, including, for example, an adjustment of

2 or 4 depending on the age of the minor involved and an adjustment of 2 for an offense

involving distribution. *See* U.S.S.G. § 2G2.1. These enhancements skew offense levels upward

such that the Guideline does not appropriately distinguish between the least culpable and most

culpable offenders."), *aff'd*, 2014 U.S. App. LEXIS 22996 (7th Cir. Dec. 5, 2014).  The U.S.

Sentencing Commission has noted "the within range rate in § 2G2.1 [production] cases has

noticeably decreased during recent years."  *Federal Child Pornography Offenses, supra,* at 330.

   Eastman was not present with any victim and he did not touch any victim.[3]  He did not

produce images that some judges have called the most destructive types, showing

---

[3] *Compare United States v. Hamilton*, 548 F. App'x 728, 730 (2d Cir. 2013) ("Insofar as
Hamilton argues that . . . [life] sentences should be 'reserved [for] intentional murder,' we find
such an argument unavailing. Nor are we persuaded that a life sentence in the case at bar
overstates the 'seriousness of the offense,' *see* 18 U.S.C. § 3553(a)(2)(A), given Hamilton's role
in producing graphic child pornography by filming himself sexually abusing children as young
as four years old."); *United States v. Brown*, 843 F.3d 74, 83 (2d Cir. 2016) (upholding over
dissent from Judge Pooler 60 year sentence where "Brown *did* have actual sexual contact—
repeatedly—with multiple young victims, and Brown engaged in the *production* of child

sadomasochistic acts or acts of penetration often involving others.  Judge Jacobs recently

described what might be called "the worst" of the offenders in this area:

> They are people who force small children to engage in sexual and sadomasochistic acts, who photograph or video the scene, and who broadcast it to the world, leaving the children with the pain of the experience and the anguish of knowing that degenerates are gloating over their abuse and humiliation.

*United States v. Broxmeyer*, 699 F.3d 265, 303 (2d Cir. 2012) (Jacobs, *J.*, dissenting).  Eastman

was not involved for commercial gain; rather, his involvement appears to stem from his own

deeply troubling background.  True, the evidence is that he used deception, and he admitted as

such in his guilty plea.  But then, he did not share the images and it has been noted "children who

---

pornography during the course of this abuse") *id.* at 85 (Sack, J., concurring) ("The offenses for which the defendant was sentenced after pleading guilty to them involved a deeply disturbing combination of child molestation and the making, watching, and circulation of obscene child pornography."); *United States v. Broxmeyer*, 699 F.3d 265, 291 (2d Cir. 2012) ("[T]his case is distinguishable [from *Dorvee*] in presenting ample record evidence of Broxmeyer actively engaging minors in sexual conduct, for purposes of both photographing it and participating in it"; 30 year sentence upheld over dissent by Judge Jacobs); *United States v. Gilmore*, 599 F.3d 160, 162 (2d Cir. 2010) (30-year sentence for defendant who repeatedly raped his eight-year old daughter for two years); *United States v. Swackhammer*, 400 F. App'x 615, 616 (2d Cir. 2010) (168-month sentence upheld for defendant who repeatedly molested his children); *United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010) (en banc) (determining that 30-year sentence where defendant "raped, sodomized, and sexually tortured fifty or more little girls, some as young as four years of age, on many occasions over a four- or five-year period," and "scripted, cast, starred in, produced, and distributed worldwide some of the most graphic and disturbing child pornography that has ever turned up on the internet"); *United States v. Valenzuela*, 304 Fed. Appx 986, 988 (3d Cir. 2008) (220-month sentence for defendant who videotaped himself violently sexually assaulting his girlfriend's seven-year-old niece); *United States v. McCoy*, 692 Fed. Appx. 17, 22 (2d Cir. 2017) (upholding effective life sentence where defendant molested child in his care).

are victimized by child pornography are re-victimized every time a new offender views the images." *Price*, 2012 U.S. Dist. LEXIS 38397, at *34.[4]

"[T]he harshest sentences should be reserved for the most culpable behavior." *United States v. Newsom*, 402 F.3d 780, 785-786 (7th Cir. 2005). "Those who think that the idea of marginal deterrence should play some part in criminal sentences . . . might find little room left above [a 27 year] sentence for the child abuser who physically harms his victims, who abuses many different children, or who in other ways inflicts greater harm on his victims and society." *Id.* at 785-86. *See also Price*, 2012 U.S. Dist. LEXIS 38397, at *34 ("[C]hild pornography crimes fall within a spectrum. It is the opinion of this Court that the harshest penalties should be reserved for the worst crimes.").

Eastman was convicted of engaging in serious misconduct. This Court's sentence will reflect that. But, respectfully, he is not among the "worst" of child pornography producers, *see Broxmeyer*, 699 F.3d at 303 (Jacobs, *J.*, dissenting), whose sentence should be at the top of the punishments authorized by Congress.

### 7.     Restitution

Restitution is not a factor.

---

[4] Compare *United States v. Oehne*, 698 F.3d 119, 125 (2d Cir. 2012) (upholding 540-month sentence noting "*Dorvee* is readily distinguishable . . . . Unlike the defendant in *Dorvee*, Oehne actually sexually assaulted a child. . . . He photographed the abuse and distributed the images over the internet, where they have been viewed by thousands worldwide").

**Conclusion**

The "parsimony clause of 18 U.S.C. § 3553(a)," *Douglas*, 713 F.3d at 700, matters. Although there are aggravating factors, there is also mitigation. The Court should carefully balance the § 3553(a) factors and impose a ten-year custodial sentence, along with significant conditions of supervised release as outlined in the PSR.

THE DEFENDANT,

By /s/ William M. Bloss
WILLIAM M. BLOSS
Federal Bar No. ct01008
Koskoff Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604
TEL:  203-336-4421
FAX: 203-368-3244
Email: bbloss@koskoff.com

## <u>CERTIFICATION</u>

I hereby certify that on November 14, 2017, the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.   Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.   Parties may access this filing through the Court's system.


/S/ William M. Bloss
WILLIAM M. BLOSS