UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.  3:16-cr-006 (MPS) |
| | : | |
| v. | : | |
| | : | |
| JOHN EASTMAN | : | November 22, 2017 |

## UNITED STATES'S SENTENCING MEMORANDUM

The Government respectfully submits this memorandum in response to the sentencing memorandum of the defendant, John Eastman.

**I.** **Introduction**

Between June and November 2012, Mr. Eastman engaged in video chats with minors over the internet using his computer and the Skype video chatting service. During these video chats, Mr. Eastman enticed at least five young girls between the ages of 12 and 16 years old to engage in sexually explicit conduct, including masturbation, which Mr. Eastman recorded and/or photographed and then saved on his computer. In order to deceive and entice the minors, Mr. Eastman impersonated celebrities popular to teenagers, including Justin Bieber and Harry Styles.

This offense was not Mr. Eastman's first criminal offense.  He has a lengthy criminal history as well as a history of inappropriate sexual behavior towards adults and minors.  In fact, he was previously convicted for illegal sexual contact with a minor, and he had been on the sex offender registry for 10 years prior to committing this offense.

In light of his conduct, his history, the need to protect the public, his lack of remorse, and the other 3553(a) factors, the Government respectfully requests that the Court impose a non-Guidelines term of imprisonment in the middle of the range of 120 to 240 months, followed by a lengthy term of supervised release.

II.     **Factual Background**

The Government agrees with the offense conduct set forth in the Pre-Sentence Report ("PSR") at ¶¶ 5-41.

Mr. Eastman is a 49-year old male (*see* PSR ¶ 132) who admits that he is sexually attracted to teenage girls.  PSR ¶ 10 ("I am sexually attracted to very petite girls. I like girls that are like 14 years old and have started to develop").  From approximately June to November 2012, Mr. Eastman engaged in video chats with young girls over the internet using the Skype online video chatting service. *See* Indictment; PSR ¶ 30. In order to communicate with girls on Skype, Mr. Eastman created Skype screen names that resembled the names of celebrities that are popular with teenagers, such as Justin Bieber, Harry Styles and other members of the band One Direction, and other celebrities.  PSR ¶¶ 10, 12-14.  He chose these names because he knew the names of these celebrities would attract teenage girls to contact him.  PSR ¶ 10.  In order to make the girls think they were communicating with the actual celebrities, Mr. Eastman played old video footage of the celebrities on the computer screen and pointed his webcam at the screen so that the girls would see video footage of the celebrity as they were communicating via Skype.  PSR ¶¶ 10, 18, 28.

During these Skype video chats, Mr. Eastman knew he was sometimes chatting with girls that were between 12 and 15 years old.  PSR ¶ 10.  He chatted with the girls using the Skype text messaging function while they watched each other on Skype via their webcams.  He chatted with them in a sexual manner and asked them to pose in a sexual manner or perform sexual acts so he could watch them.  PSR ¶¶ 10, 23-24, 27-28.  Mr. Eastman then masturbated as he watched the girls engage in the sexually explicit conduct.  PSR ¶ 10.  In addition, as the girls engaged in sexually explicit conduct over Skype, Mr. Eastman used the "Video Call Snapshot" function on Skype to take still photos of the girls he was talking to during the video call.  PSR ¶¶ 19-20.  These

snapshots depict a still image of whatever the other person is doing on the video call when the snapshot is taken. *Id.* Mr. Eastman also used a webcam to produce video recordings of some of the girls on Skype as they engaged in sexually explicit conduct. PSR ¶¶ 21, 28, 33.

A forensic review of Mr. Eastman's computer revealed that he produced and saved over 74 photos and 2 videos of child pornography depicting girls he was communicating with on Skype. PSR ¶¶ 20-21. The photos depict minor females, in various stages of undress, posing in a sexually explicit manner. *Id.* The videos depict a minor female posing naked and masturbating. *Id.*

Law enforcement has since identified five of the girls depicted in these photos and videos, whose ages range from 12 to 16 years old. PSR ¶¶ 22-32. One of the girls, MV#1, was a 16-year old girl who lived in the state of Washington. PSR ¶ 23. On approximately November 6, 2012, Mr. Eastman communicated with her using the Skype screenname justin.bieber727. PSR ¶ 23. During the conversation, she told him she was only 16-years old. PSR ¶ 24. She also told him she was a "loner" in school and that no one at school liked her. PSR ¶ 24. In order to convince her that he was really Justin Bieber, Mr. Eastman chatted about his concert tour and how he was on the road and about to check into a hotel. *Id.* He then told her she was cute and hot, and he also told her he would tell Harry, Niall, and Louis (which are the first names of the One Direction band members) to add her as a friend on Skype. *Id.* Although Mr. Eastman knew she was under 18 years old, he nonetheless instructed her to pull her underwear down and pose in a lascivious manner so that Mr. Eastman could see her exposed genitals. PSR ¶¶ 23-24. In order to encourage her, he told her she was hot and sexy, he promised to call her, he told her he loved her, and he referred to her as his "gf" (which is short for girlfriend). PSR ¶ 24. When she complied, Mr. Eastman used the Skype Video Call Snapshot function to produce and save still images of MV#1

lasciviously displaying her exposed genitals.  PSR ¶¶ 23-24.  In total, Mr. Eastman produced and saved 27 photos depicting MV#1 engaged in sexually explicit conduct.  PSR ¶ 24.

Another girl, MV#2, was a 12-year old girl who lived in Florida.  PSR ¶¶ 26-27.  Mr. Eastman communicated with her numerous times in September and October 2012 using the Skype screenname harry.styles888.  *Id.*  In one Skype conversation recovered from his computer, Mr. Eastman instructed her to pose in a sexually explicit manner.  *Id.*  Although no photos of MV#2 from that particular day were located, Mr. Eastman produced and saved 20 photos on other days that depicted MV#2 engaged in sexually explicit conduct.  *Id.*

A third girl, MV#3, was a 14 years old who lived in Nebraska.  PSR ¶ 28.  From July to August 2012, Mr. Eastman communicated with her on Skype using his Justin Bieber screen names.  PSR ¶¶ 28-30.  During this time, he produced and saved two videos of their Skype video calls.  PSR ¶ 28. The recordings depict MV#2 masturbating.  *Id.*  In one video, as MV#3 is masturbating, the recording shows chat messages in which Mr. Eastman (using the Justin Bieber screen name) instructs her to "rub" and asks her "can u get wet."  *Id.*

The fourth and fifth girls, MV#4 and MV#5, reside in the country of Norway and were minors at the time of the offense.[1]  PSR ¶¶ 30-31.  Mr. Eastman had 27 photos of the two girls, either alone or together in the same photos.  *Id.*  As with the other girls, the photos, which depict MV#4 and MV#5 engaged in sexually explicit conduct, were taken using the Skype Video Snapshot function.  *Id.*

---

[1]  After the final PSR was filed, the Government received reports from police in Norway, who were able to locate, contact, and interview the two minors.  Based on their dates of birth, they were 12 years old at the time of the offense. In their interviews, they indicated that they had been communicating on Skype with a person using a screenname containing the name Harry Styles, who had asked them to pose in sexually explicit poses.

In addition to enticing girls to engage in sexually explicit conduct on Skype, Mr. Eastman also viewed child pornography on online websites, and hundreds of deleted images of child pornography were located on Mr. Eastman's computer.  PSR ¶¶ 11, 36-38.

## II.   **Procedural Background**

Based on a complaint from the mother of another girl in Vermont, detectives from the Waterbury Police Department ("Waterbury PD") went to Mr. Eastman's apartment on November 10, 2012.  PSR ¶¶ 6-8.  Mr. Eastman let the detectives into the apartment and consented to let them take and examine his computer.  PSR ¶¶ 8-10.  He also agreed to go with them to the police station for an interview.  *Id.*  After signing a waiver of his *Miranda* rights, Mr. Eastman provided a signed written statement in which he admitted to communicating with minors over Skype by pretending to be celebrities.  *Id.*  Following the interview, the detectives drove Mr. Eastman home.  PSR ¶ 11.  Shortly thereafter, while the investigation was pending. Mr. Eastman moved to Virginia.  PSR ¶ 139.

In May 2013, a State of Connecticut Arrest Warrant was issued for Mr. Eastman, charging him with various state offenses based on the above offense conduct.  PSR ¶¶ 41, 129.  Mr. Eastman was arrested on the Connecticut warrant in Norfolk, VA on May 14, 2013, and he was subsequently extradited back to Connecticut on May 29, 2013.  PSR ¶ 41.

Federal law enforcement later adopted the case, and on February 20, 2015, Mr. Eastman was arrested on a federal criminal complaint charging him with various child exploitation offenses based on the above offense conduct.  *See* ECF Nos. 1, 6, 19.

On January 7, 2016, a federal grand jury sitting in New Haven returned a two-count indictment charging the Mr. Eastman with (i) coercion and enticement, *i.e.* using an interstate facility to persuade a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. §

5

2422(b) (Count One); and (ii) possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Two). *See* Indictment (ECF No. 28).

Mr. Eastman subsequently filed a motion to suppress, which the Court denied on August 15, 2016. *See* ECF Nos. 30, 72. Mr. Eastman then moved to replace his attorneys, and his attorneys also moved to withdraw as counsel. ECF Nos. 73, 75. The Court granted his attorneys' motion to withdraw as counsel, and the Court appointed new counsel for Mr. Eastman. ECF Nos. 76-77.

On March 2, 2017, Mr. Eastman pleaded guilty to Count One of the indictment charging him with using an interstate facility to persuade a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b). PSR ¶ 1; Plea Agreement (ECF No. 101). He faces a mandatory minimum sentence of 10 years of imprisonment, a maximum sentence of life imprisonment, a term of supervised release of five years to life, a maximum fine of $250,000, and a $100 mandatory special assessment.[2] PSR ¶¶ 167, 169, 173-74. However, in the plea agreement, the Government agreed not to seek a sentence above 240 months. *See* Plea Agreement at 5; PSR ¶ 3.

As part of his plea agreement, Mr. Eastman agreed to the additional Special Conditions of Supervised Release outlined in the rider to the plea agreement.[3] *See* Plea Agreement at 2, 12-13.

---

[2] The Government notes that pursuant 18 U.S.C. § 3014, which was enacted on May 29, 2015, the Court is required to assess an additional $5,000 special assessment unless the Court finds the defendant is indigent. The PSR does not recommend imposing this additional assessment. *See* PSR ¶ 174. The Government agrees with the PSR and does not believe the assessment should be applied to Mr. Eastman for two reasons. First, Mr. Eastman's offense conduct took place in 2012, before the law was enacted, and therefore, imposing the assessment would violate the Ex Post Facto Clause of the Constitution. *See United States v. Labeille-Soto*, 163 F.3d 93, 102 (2d Cir. 1998) (holding that special assessment in the amount of $100 violated ex post facto clause, where the offense was complete prior to the effective date of the increase in the special assessment amount from $50 to $100). Second, as evidenced by Mr. Eastman's financial condition and the fact that he has court-appointed counsel, Mr. Eastman appears to be indigent. *See* PSR ¶¶ 163-66, 174. Accordingly, the Court should not impose the additional $5,000 special assessment on Mr. Eastman.

[3] The conditions of supervised release agreed to in the Plea Agreement are consistent with the recommended conditions in the PSR.

He also agreed to forfeit his interest in his computer.[4]  *See* Plea Agreement at 3.  The Government, in return, agreed to dismiss Count Two of the indictment after his sentencing.  *See* Plea Agreement at 8.

Following the guilty plea and after his pre-sentence interview with the Probation Officer, Mr. Eastman's attorney moved to withdraw as counsel, and on April 18, 2017, Mr. Eastman filed a motion to withdraw his guilty plea and dismiss his counsel.  ECF Nos. 105, 110; PSR ¶ 45.  On May 4, 2017, the Court denied his motion to withdraw his guilty plea. ECF Nos. 113 (Original Order), 116 (Corrected Order).  The Court also granted his attorney's motion to withdraw as counsel, and appointed new counsel to represent Mr. Eastman.  ECF Nos. 113.

Sentencing is currently scheduled for November 28, 2017.

## III.    The PSR and Guidelines Calculation

The PSR calculated Mr. Eastman's total offense level under the Sentencing Guidelines as follows.  The PSR applied U.S.S.G. § 2G2.1 because the defendant's offense conduct involved causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which results in a higher offer offense level than under U.S.S.G. § 2G1.3.  *See* PSR ¶¶ 48, 55, 62, 70, 77; U.S.S.G. § 2G1.3(c)(1) (containing cross-reference to U.S.S.G. § 2G1.3); *see also* Commentary to U.S.S.G. § 2G1.3, Application Note 5.  In addition, because the offense involved the production of child pornography of more than one minor, the Guidelines are applied as if the exploitation for each minor had been contained in a separate count of conviction.  PSR ¶ 47; *see* U.S.S.G. § 2G2.1(d).  In this case, the PSR determined that the offense conduct and/or relevant conduct includes five minor victims.  PSR ¶¶ 22-32.

---

[4]  The Government is separately filing a motion for forfeiture of Mr. Eastman's computer.

For the first victim, MV#1, the PSR calculated Mr. Conrad's base offense under U.S.S.G. § 2G2.1(a) to be 32 and then applied a two-level increase under U.S.S.G. § 2G2.1(b)(6)(B) because the offense involved the use of a computer.  As a result, the PSR determined that Mr. Eastman's offense level with respect to MV#1 is 34.  PSR ¶¶ 48-54.

For the second, fourth, and fifth victims (MV#2, MV#4, and MV#5), the PSR calculated Mr. Eastman's base offense under U.S.S.G. § 2G2.1(a) to be 32 and then applied the following specific offense characteristic adjustments: (a) two-level increase under U.S.S.G. § 2G2.1(b)(1)(B) because the offense involved a minor who had attained the age of twelve years but not yet attained the age of sixteen years; and (b) two-level increase under U.S.S.G. § 2G2.1(b)(6)(B) because the offense involved the use of a computer. As a result, the PSR determined that Mr. Eastman's offense level with respect to MV#2, MV#4, and MV#5 is 36.  PSR ¶¶ 55-61, 70-84.

For the third victim, MV#3, the PSR calculated Mr. Eastman's base offense under U.S.S.G. § 2G2.1(a) to be 32 and then applied the following specific offense characteristic adjustments: (a) two-level increase under U.S.S.G. § 2G2.1(b)(1)(B) because the offense involved a minor who had attained the age of twelve years but not yet attained the age of sixteen years; (b) two-level increase under U.S.S.G. § 2G2.1(b)(2)(A) because the offense involved a sexual act; and (c) two-level increase under U.S.S.G. § 2G2.1(b)(6)(B) because the offense involved the use of a computer.  As a result, the PSR determined that Mr. Eastman's offense level with respect to MV#3 is 38.  PSR ¶¶ 62-69.

Pursuant to the multiple count and grouping rules contained in the Guidelines, the PSR calculated Mr. Eastman's combined offense level under U.S.S.G. § 3D1.4 to be 43.  PSR ¶¶ 85-88.  The PSR did not decrease Mr. Eastman's offense level for acceptance of responsibility because

Mr. Eastman sought to withdraw his guilty plea prior to sentencing. PSR ¶¶ 45, 90. Accordingly, the PSR calculated Mr. Eastman's total offense level to be 43.   PSR ¶ 91.

The PSR determined that Mr. Eastman has 15 criminal history points, which places him in Criminal History Category VI.  PSR ¶¶ 92-127.  As a result, the PSR concluded that Mr. Eastman faces a Guidelines range of life of imprisonment.  PSR ¶ 167.  He also faces a term of supervised release of five years to life, a fine of $25,000 to $250,000, and a $100 special assessment.  PSR ¶¶ 170, 174-75.

The Government agrees with the Guidelines calculation in the PSR.[5]  The Government also has no objections to the PSR.

**IV.   Discussion of Sentencing and 3553(a) Factors**

  **A.  The PSR correctly determined the Guidelines range is life of imprisonment.**

The PSR calculated the Guidelines range for Mr. Eastman to be life of imprisonment. As set forth above, in determining the Guidelines range, the PSR included a multiple count analysis that took into account the exploitation of not only MV#1, but also MV#2, MV#3, MV#4, and MV#5.  In addition, the PSR also did not reduce Mr. Eastman's offense level for acceptance of responsibility.  The analysis in the PSR is correct.

Mr. Eastman objects to the PSR's Guidelines calculation. *See* Def.'s Sentencing Mem. at 13-15.  He argues that the Guidelines calculation should be based solely on the conduct relating to

---

[5] The Guidelines range in the PSR differs from the sentencing range the Government calculated in the plea agreement because, as discussed above, the PSR calculation does not include a 3-level reduction for acceptance of responsibility. In the plea agreement, the Government believed the defendant would qualify at sentencing for a 3-level reduction pursuant to 3E§1.1 based on his acceptance of responsibility. However, the Government's recommendation for a 3-level reduction was expressly conditioned on the defendant truthfully admitting his offense conduct, and the Government reserved its right to withhold or seek denial of the reduction if the defendant sought to withdraw his guilty plea. *See* Plea Agreement at 4. Here, the defendant did just that. After entering his guilty plea, Mr. Eastman filed a motion to withdraw his plea. As such, the Government agrees with the PSR that the 3-level reduction is not appropriate, and therefore, the correct Guidelines range is life of imprisonment.

MV#1, not conduct relating to any other victim, because that is all he stipulated to in the plea agreement. *See id*. He further argues that he should receive some credit for acceptance of responsibility. *See id.* at 15.

As explained below, Mr. Eastman's arguments are without merit.

1. The PSR properly included a multiple count analysis that took into account the conduct related to all five victims.

The PSR properly considered the evidence relating to all five minor victims in determining the correct Guidelines range. The applicable section of the Sentencing Guidelines, U.S.S.G. § 2G2.1(d), expressly provides that "[i]f the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation of each minor had been contained in a separate count of conviction." In addition, Application Note 7 expressly provides that "if the relevant conduct of an offense of conviction includes more than one minor being exploited, *whether specifically cited in the count of conviction or not*, each such minor shall be treated as if contained in a separate count of conviction." (emphasis added).

Mr. Eastman argues that his offense conduct should not include multiple victims because in the plea agreement, he only stipulated to offense conduct involving MV#1. *See* Def.'s Sentencing Mem. at 13-15. He further argues that conduct involving the other four minor victims (MV#2, MV#3, MV#4, and MV#5) should not be considered "relevant conduct" under U.S.S.G. § 1B1.3(a)(1)(A) because it did not occur "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id*. Mr. Eastman's arguments should be rejected.

First, "[a] guilty plea conclusively admits all factual allegations of the indictment." *United States v. Yijun Zhou*, 838 F.3d 1007, 1013 (9th Cir. 2016) (quoting *United States v. Kubick*, 205 F.3d 1117, 1129–30 (9th Cir. 1999); *see, e.g., United States v. Tolson*, 988 F.2d 1494, 1501 (7th

Cir. 1993) ("a defendant who pleads guilty to an indictment voluntarily and with the assistance of counsel before a United States district court judge may not challenge the facts of the indictment on appeal."); *United States v. Rivera Ramos*, 856 F.2d 420, 423 and n.6 (1st Cir. 1988) ("a defendant who pleads guilty may not later contest the factual and theoretical foundations of the indictment to which he has pled" and "may not repudiate the allegations of an indictment to which he has pled guilty"); *United States v. Smith*, 407 F.2d 33, 35 (2d Cir.1969) ("a plea of guilty admits all facts well pleaded"); *United States v. Sasso*, 215 F.3d 283, 285 (2d Cir. 2000) (citing *id.*).

In this case, Count One of the indictment expressly alleges that Mr. Eastman enticed multiple "individuals" between "June 2012 and November 10, 2012." By pleading guilty to Count One, he has admitted the allegations contained in Count One. Thus, Mr. Eastman's offense of conviction is not limited to his enticement of MV #1. His enticement of the other victims (MV #2, MV #3, MV #4, and MV #5) are part of the offense of conviction itself and should be included in the Guidelines calculation.

Although the Stipulation of Offense Conduct attached to the Plea Agreement only discusses Mr. Eastman's enticement of MV#1, the stipulation in no way narrows or limits the conduct that is covered by the offense of conviction for purposes of the Sentencing Guidelines. In fact, the stipulation expressly provides that the Government "reserve[s] their right to present additional relevant *offense conduct* to the attention of the Court in connection with sentencing." Plea Agreement at 10 (emphasis added). The Plea Agreement further provides that the stipulation does not set forth all of the relevant conduct and characteristics that the Court may consider and that "this stipulation is not binding on the Court." Plea Agreement at 5. Thus, the Court may consider the other victims as part of the offense conduct regardless of the stipulation.

Second, even if Mr. Eastman's enticement of the other victims is not within the offense of conviction itself, it is certainly relevant conduct. Just as he enticed MV#1 to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct, he also enticed the additional victims to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct. Although his enticement of these additional victims predates his enticement of MV#1, his enticement of these additional victims was part of the same course of conduct and within the same time period alleged in Count One of the Indictment: he used the same computer, the same method of communicating with the victims (*i.e* Skype), the same method of deceiving the victims and masking his true identity (*i.e* impersonating celebrities), and the same method of photographing/recording and then saving depictions of their sexually explicit conduct (*i.e.* his computer).

Thus, in one sense, Mr. Eastman enticed these other minors as part of his preparation for enticing MV#1. The more he impersonated these celebrities and chatted with minors, the better and more proficient he became at enticing them, ultimately leading to his enticement of MV#1.

More significantly, after enticing the other victims and producing the sexually explicit images and videos of them, he maintained those images and videos on his computer and continued to possess them while he was enticing MV#1. In fact, he continued to possess the images and videos of all five victims until the day he was visited by the Waterbury PD and he consented to let the police examine his computer. Accordingly, Mr. Eastman's exploitation of these additional victims continued during the commission of the offense against MV#1 and therefore constitutes relevant conduct. *See United States v. Craig*, 420 F. App'x 605, 606 (7th Cir. 2011) (finding district court did not plainly err in its Guidelines calculations by including as relevant conduct under U.S.S.G. § 1B1.3(a)(1)(A) the defendant's acts towards six children, four of whom were not

named in the indictment, because they all took place during the same time frame and as part of the same scheme and because the guidelines expressly contemplate that uncharged instances of child exploitation will be counted); *United States v. Hodge*, 805 F.3d 675, 682 (6th Cir. 2015) (where defendant was convicted of receipt of child pornography he downloaded "[i]n or around October 2011" but continued to possess those images through the period he was secretly video recording his stepdaughter, holding that the video recording happened "during" the offense of conviction and constituted relevant conduct under USSG § 1B1.3(a)(1)); *United States v. Ahders*, 622 F.3d 115, 122–23 (2d Cir. 2010) (remanding case to determine whether defendant's possession of child pornography of certain minors "occurred during the commission of" his production of pornographic materials involving minor ("EM"), or "in preparation for that offense," and listing non-dispositive factors the court may consider, including, among other things, the temporal proximity between the possession of the images and the offense of conviction, *i.e.* whether defendant possessed them during his abuse of EM; the similarity between the images on the computer and the images he made of EM; whether defendant used the same computer with EM as he used to download the images of the other girls; whether defendant admitted that he liked looking at child pornography; and whether his viewing the images aroused him and was a factor in his abusing EM); *see also United States v. Nance*, 611 F.3d 409, 410–11, 416 (7th Cir. 2010) (where defendant was convicted of receipt of child pornography involving 12–year old girl he had sexually molested, holding his possession of pornographic materials involving other children was relevant conduct under § 1B1.3(a)(1) that could be used to enhance sentence); *United States v. Stulock*, 308 F.3d 922, 924–26 (8th Cir. 2002) (where defendant was convicted of receiving video of child pornography, affirming district court's holding that his possession of pornographic bondage images of other children on his computer was relevant conduct under § 1B1.3(a)(1) that could be

used to enhance his sentence); *United States v. Ellison*, 113 F.3d 77, 82–83 (7th Cir. 1997) (where defendant was convicted of receipt of video of child pornography, holding that district court's inclusion of defendant's possession of magazines containing sadomasochistic images of boys as "relevant conduct" under § 1B1.3(a)(1) was "far from clear error"); *United States v. Dunlap*, 279 F.3d 965, 966 n.3 (11th Cir. 2002) (holding that defendant's possession of sadistic images when he transmitted child pornography was relevant conduct under § 1B1.3(a)(1)).

The Government's agreement in the Plea Agreement to dismiss Count Two of the Indictment after sentencing further supports the notion that the parties anticipated including these additional victims as relevant conduct. Count Two of the Indictment charged possession of child pornography and identified several images that Mr. Eastman is alleged to have possessed. The minors depicted in these images are MV#2, MV#4, and MV#5. In the Plea Agreement, the Government agreed to dismiss Count Two after sentencing "because the conduct underlying the dismissed count will have been taken into account in determining the appropriate sentence." Plea Agreement at 8. Thus, the parties fully anticipated that the exploitation of those minors would be factored in the Guidelines analysis.

Mr. Eastman's reliance on *United States v. Wernick*, 691 F.3d 108 (2d Cir. 2012), is unavailing. In *Wernick*, the defendant was convicted after trial on five counts of child exploitation offenses. *Id.* at 110. Counts One to Four related to child pornography related offenses. *Id.* Count Five charged enticement and related to minor male teenagers with whom the defendant chatted online and proposed meeting for sex. *Id.* at 110-11. For purposes of sentencing, the Government also introduced evidence of the defendant's efforts to molest three young children, all age five or younger, who he did not chat with online, but instead chatted with their fathers about the possibility of having sex with their daughters. *Id.* at 111.

14

In *Wernick*, the PSR grouped the offenses into two groups for sentencing purposes. *Id.* at 112. The first category, comprising Counts One through Four, related to the defendant's possession and distribution of child pornography. *Id.* The second category comprised only the enticement count. *Id.* For determining the offense level for this count, the PSR included as actual offense conduct the acts with the two teenagers proven at trial. *Id.* It also included as relevant conduct the acts with three additional teenagers he chatted with online, which were proven only at sentencing. *Id.* Finally, it included as relevant conduct the acts of molestation and attempted molestation against the three younger children who he did not chat with online but met by chatting with their fathers. *Id.* at 111-12.

On appeal, the Second Circuit held that the conduct with respect to the three younger children did not constitute relevant conduct. *Id.* at 117. The defendant did not challenge whether the conduct with respect to the three additional teenagers proven only as sentencing constituted relevant conduct. *Id.* at 112 n.4. The Court noted that temporal proximity alone cannot be used to show that conduct was committed "during" an offense so as to constitute relevant conduct. *See id.* at 115. The Court further noted there was no evidence to show that the defendant was able to use his pursuit of the young children to persuade or entice the teenagers to have sex with him. *Id.* at 116. In other words, there was no evidence showing that the defendant used the conduct related to the young children "in preparation for" his offense against the teenagers so as to constitute relevant conduct. *See id.*

The *Wernick* case is distinguishable from Mr. Eastman's case. In *Wernick*, the defendant was convicted of enticing teenagers he met online to have sex, but the PSR included as relevant conduct the defendant's molestation or attempted molestation of young children that he did not directly chat with or entice online. Rather, the defendant in *Wernick* met or attempted to meet the

young children through a different course of conduct: chatting with their fathers.  By contrast, in Mr. Eastman's case, he engaged in the same course of conduct with respect to all five victims: he used the same computer, the same method of communicating with the victims (*i.e* Skype), the same method of deceiving the victims and masking his true identity (*i.e* impersonating celebrities), and the same method of photographing/recording and then saving depictions of their sexually explicit conduct (*i.e.* his computer).

Unlike *Wernick*, Mr. Eastman's case is more akin to *Craig*, where the Seventh Circuit upheld the district court's decision to include as relevant conduct under U.S.S.G. § 1B1.3(a)(1)(A) the defendant's acts towards six children, four of whom were not named in the indictment, because they all took place during the same time frame and as part of the same scheme and because the guidelines expressly contemplate that uncharged instances of child exploitation will be counted. *See* Craig, 420 F. App'x at 606.  In fact, in *Wernick*, the Second Circuit took note of *Craig* and stated "it appears that the *Craig* decision is consistent with our own view that activities occurring as part of the same course of conduct are relevant; the case does not rely on mere temporal overlap." *Wernick*, 691 F.3d at 116 n.8.

Accordingly, Court should find that the PSR properly considered the conduct related to all five victims as either part of the offense of conviction itself or as relevant conduct, and that the inclusion of the multiple victim analysis in the Guidelines calculation is correct.[6]

---

[6]  Even if the Court concludes that the Guidelines calculation should not include a multiple victim analysis for all five victims, the Court still can and should consider Mr. Eastman's conduct related to all five victims under the 3553(a) factors.  Indeed, the defendant concedes as much in his sentencing memorandum. *See* Def.'s Sentencing Mem. at 15 ("We do not deny that the information [about other victims in PSR ¶¶ 26-33] can be considered by the Court").

2. <u>Mr. Eastman's offense level should not be reduced for acceptance of responsibility.</u>

A two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) is unwarranted. Although Mr. Eastman admitted to the offense of conviction during his pre-sentence interview with Probation, he subsequently attempted to withdraw his plea ***after*** his pre-sentence interview. The Plea Agreement expressly states that "the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his guilty plea[.]" Plea Agreement at 4.

Moreover, as the Sentencing Guidelines acknowledges, "a defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." Commentary to U.S.S.G. 3E1.1, Application Note 3. Although U.S.S.G. § 3El.1 and its commentary do not mention the unsuccessful move to withdraw a plea as a reason to deny a two-level reduction for acceptance of responsibility, the Second Circuit has made clear that "an attempt to withdraw a plea" is a "well-established ground for denying the adjustment" for acceptance of responsibility. *United States v. Hirsch*, 239 F.3d 221, 226 (2d Cir. 2001) ("In order to make the motion to withdraw and yet retain acceptance credit, [the] defendant's reason for demanding a trial must be designed to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)" (internal quotation and citation omitted)); *see United States v. Cox*, 299 F.3d 143, 149 (2d Cir. 2002).

Here, as the Court noted in its decision denying Mr. Eastman's motion to withdraw his guilty plea, Mr. Eastman sought to withdraw his guilty plea because he claimed that he was pressured and coerced to plead guilty and did not have enough information to arrive at an informed decision.  *See* ECF No. 116 at 5.  He further claimed his counsel was ineffective for failing to

investigate his claims relating to chain of custody and Fourth Amendment violations, which the Court had already denied in its decision denying his motion to suppress. *Id.* at 13.

Mr. Eastman's reasons for withdrawing his plea are not challenges to the constitutionality of a statute, as described in *Hirsch* and *Cox,* which would justify awarding credit under the Guidelines for acceptance of responsibility after an attempt to withdraw a plea. *See Hirsch*, 239 F.3d at 226; *Cox*, 299 F.3d at 149. Rather, as the Court concluded, Mr. Eastman's "motion to withdraw his plea [was] the product of a "change of heart.'" ECF No. 116 at 18. A "change of heart" is inconsistent with acceptance of responsibility

Accordingly, a reduction in Mr. Eastman's offense level for acceptance of responsibility is unwarranted.

### B. A non-Guidelines sentence of imprisonment between 120 to 240 months is warranted.

The Government agrees with the defendant and the Probation Officer that the Guidelines range in this case—a life sentence—may be more than necessary to accomplish to goals of sentencing. [7] *See* PSR ¶ 183. Instead, the Government respectfully requests that the Court sentence Mr. Eastman to a non-Guidelines term of imprisonment in the middle of the range of 120 months, which the statutory mandatory minimum, to 240 months.

The Government believes a sentence in the middle of that range is warranted under the various 3553(a) factors. These factors include not only the facts and circumstances the defendant presents in his sentencing memorandum, but also the seriousness of the offense and its impact on the victims, Mr. Eastman's lack of remorse, Mr. Eastman's history and characteristics, the need to

---

[7] Although the Government agrees that a non-Guidelines sentence is appropriate in this particular case, the Government does not agree with the defendant's general criticism of the Sentencing Guidelines in child exploitation cases. *See* Def.'s Sentencing Mem. at 16-19.

protect the public, the need to deter Mr. Eastman's and others, the need to promote respect for the law, and the need to avoid unwarranted sentencing disparities among defendants.

In this case, Mr. Eastman's offense was a very serious one. He enticed at least five girls between the ages of 12 and 16 to engage in sexually explicit conduct during video chats via Skype. For at least one of the victims, these sexual acts included acts of masturbation. Mr. Eastman preyed on the likelihood that young girls would be drawn to celebrities such as Harry Styles and Justin Bieber, so he tricked his victims by impersonating those celebrities. He even went so far as to find videos of those celebrities, which he displayed over Skype, so that these young girls would believe they were communicating with the real celebrity. During these video chats, Mr. Eastman directed the young girls to take off their clothes, pose in a sexual manner, and in some instances, engage in sexual acts such as masturbation. Mr. Eastman then masturbated as he watched the girls engage in sexually explicit conduct. He also photographed and/or video recorded the girls in order to create a permanent record of their sexually exploitation. In short, Mr. Eastman exploited these 12 to 16-year-old girls for his own sexual gratification. Although there is no evidence that Mr. Eastman distributed the videos and pictures of his victims or had physical contact with them, his actions are nonetheless abhorrent.

In some cases, Mr. Eastman also preyed upon other emotions and vulnerabilities of these young girls. For example, MV#1 told Mr. Eastman, who was pretending to be Justin Bieber, that she was a 16-years old girl who was lonely and had no friends. With this knowledge, Mr. Eastman, through the disguise of a celebrity that the girl admired, told her she was hot and sexy, told her he loved her, he referred to her as his girlfriend, and promised to call her and introduce her to his celebrity friends, but only if she pulled down her underwear and posed in a sexual manner. She

complied, completely unaware that Mr. Eastman was secretly photographing her and saving the pictures on his computer.

In addition to the gravity of Mr. Eastman's conduct, the Court should also consider the impact of his conduct on the victims of his crime.  MV#4, through her lawyer, has submitted a claim for compensation in which the lawyer describes the impact on MV#4 as follows:

> the victim has been extremely afraid and worried about the consequences of the person charged having pictures/videos of her. She does not know what [he has] or how many he has, but it stands to reason that there are many [pictures/videos] since it went on daily for several months. She has at times been stressed and [she] thinks about the abuses often. She has had trouble sleeping and concentrating, and also periodically [she] has isolated herself at school. In junior high school she struggled psychologically and had to get help from, among others, the PPT [School Psychology Service]. It has been exceedingly strenuous for the victim now that the matter has become a police case with interviews and everything that this entails. The victim has contacted her family doctor . . . for information and guidance.

MV#4's Claim for Compensation, attached hereto as Exhibit A.[8]  Although no other victim impact statements have been received, the Court is well aware from other cases of the repercussions of child exploitation.  Now that Mr. Eastman's victims are aware that they were tricked, recorded, and exploited by Mr. Eastman, they will undoubtedly and profoundly be impacted for years to come, if not for the rest of their lives.

The Court should also consider that unlike other defendants who have been before the Court for sentencing in child exploitation cases, Mr. Eastman, to date, has expressed no remorse for his actions and no concern for his victims.  *See, e.g., United States v. Broxmeyer*, 699 F.3d 265, 295 (2d Cir. 2012) (stating that a defendant's lack of remorse can "expand[] the range of substantively reasonable sentences to allow the district court to afford adequate specific deterrence

---

[8]  The Claim for Compensation is in Norwegian. An English translation is appended to the end of Exhibit A. Although the claim is dated in June 2017, the document was not delivered to U.S. law enforcement until a few weeks ago.  The English translation was not completed until today.

and protection of the public"); *United States v. Crowley*, 318 F.3d 401, 421 (2d Cir. 2003) ("A sentencing court is in the best position to judge the appropriateness of a sentenc[e] in light of the defendant's . . . remorse or lack of it . . . .")

Also troubling is Mr. Eastman's history and characteristics, which shows an utter disregard for the law.  As noted in the PSR, he has a lengthy criminal history in which he had 31 prior convictions in the 27 years before his arrest in this case.  *See* PSR ¶¶ 94-125, 186.  For most of these convictions, he did not receive any criminal history points due to their age.  *See id.*  Mr. Eastman's history also shows a disturbing pattern of inappropriate sexual behavior towards both adults and minors.  For example, Mr. Eastman's mother reported that during high school, he would call his younger sister's friends and make sexually inappropriate statements to them.  *See* Evaluation Ltr. of Dr. Karsten Heil, dated Nov. 9, 2017 ("Heil Eval.") at 8.  He was also convicted multiple times for making obscene and harassing phone calls and harassment.  *See* PSR ¶¶ 97, 100-104, 119; Heil Eval. at 5-6.

In 1991, Mr. Eastman was involved in appropriate behavior involving a nine-year old girl.  *See* PSR ¶ 135; Heil Eval. at 5.  When he learned that police were looking for him, he fled to Florida.  *See id.*  He was later arrested in 1997 after he returned to Connecticut.  *See id.* at 6; PSR ¶ 117.  He ultimately pleaded guilty to charges of (1) attempted sexual assault in the fourth degree, in violation of C.G.S. §§ 53a-73a and 53a-49, and (2) risk of injury to a minor, in violation of C.G.S. § 53-21(a)(2), otherwise known as illegal sexual contact with a minor.  *See* PSR ¶ 117; *see also* Record of Conviction, attached hereto as Exhibit B.[9]  Although Mr. Eastman claims the incident simply involved pulling down the underwear of the girl and spanking her, the record of

---

[9]  The Record of Conviction states that Mr. Eastman was convicted of Risk of Injury to a Minor, in violation of C.G.S. § 53-21(2) instead of 53-21(a)(2).   The reference to 53a-21(2) appears to be a typographical error as that statute is titled "Use of physical force in defense of property" and has no subsections.  The correct citation should be C.G.S. § 53-21(a)(2), which prohibits risk of injury to minors.

conviction demonstrates his offense involved "sexual contact" with a minor.  Attempted sexual assault in the fourth degree, in violation of C.G.S. §§ 53a-73a, prohibits "sexual contact" with a minor. Similarly, risk of injury to a minor, in violation of C.G.S. § 53-21(a)(2), prohibits a person from "[having] contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subject[ing] a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child."  As a result of his conviction, Mr. Eastman was placed on the sex offender registry for 10 years.  PSR ¶ 117.

In light of Mr. Eastman's instant offense conduct and his history and characteristics, the Government submits that Mr. Eastman presents a real danger to the community, particularly minors.  Indeed, in Mr. Eastman's own signed statement to law enforcement, he stated "I am sexually attracted to very petite girls. I like girls that are like 14 years old and have started to develop." PSR ¶ 10.  Therefore, there is a need to protect the public from Mr. Eastman and to deter him from engaging in such conduct in the future.  This danger and need to protect the public warrants not only a lengthy sentence of imprisonment, but also a lengthy period of supervised release to ensure he does not return to this behavior after his release from prison.

There is also a need for general deterrence and promoting respect for the law so that others are deterred from engaging in similar conduct.  Unfortunately, the online sexual enticement of minors through Skype and other internet based services is becoming all too familiar.  Other individuals who believe that engaging in such child exploitation over the internet poses no harm and will go undetected must hear a message that such criminal conduct causes real harm to children and will be taken seriously and punished appropriately.

22

Finally, in order to avoid unwanted sentencing disparities, the Court should consider the sentences other defendants have received in similar enticement cases. In this district, sentences in recent years for similar enticement offenses have ranged from 120 months to 240 months.

For example, earlier this year, in February 2017, Judge Bryant sentenced defendant Adam Simpson to 120 months of imprisonment for enticing minors to perform sexually explicit acts during online video chats on Skype and other video chatting services. *See United States v. Simpson*, Case No. 3:15-cr-042 (VLB), ECF No. 36 at 12 (plea agreement). As set forth in the plea agreement in that case, over an 11-month period in 2013, Simpson enticed at least three girls between the ages of 12 and 16 to perform sexual acts and engage in sexually explicit conduct, which he then recorded and saved on his computer. *See id*. In order to deceive the minors, Simpson misrepresented his age and utilized videos of young boys to impersonate being a young boy himself. *See id.* Unlike Mr. Eastman, Mr. Simpson had no criminal history and was in Criminal History Category I. *See id*. at 7.

Similarly, in August 2017, Judge Underhill sentenced defendant Arturo Castro to 120 months of imprisonment for enticing a 15-year old girl through the smartphone app "Chess with Friends." *See United States v. Castro*, Case No. 3:16-cr-00237 (SRU), ECF No. 37 at 11 (plea agreement). Using the app's chat option, Castro asked the minor to send him child pornography images and videos of herself. *See id.* Later, Castro traveled from Illinois to Connecticut and engaged in illicit sexual activity with the minor victim. *See id*. He also had no criminal history and was in Criminal History Category I. *See id.* at 5.

In May 2015, Judge Meyer sentenced defendant Miguel Torres to 120 months of imprisonment for enticing a 120 months of imprisonment for enticing a 14-year old girl to send him sexually explicit videos and pictures of herself via text messaging. *See United States v. Torres*,

Case No. 3:15-cr-00032 (JAM), ECF No. 31 at (plea agreement).  Torres also sent the minor sexually explicit videos and pictures of himself, and he told her that he had engaged in sexual conduct with other girls so that the minor would be comfortable with it.  *See id.*  He also was in Criminal History Category I.  *See id.* at 5.

In the middle of the spectrum, this Court sentenced defendant Nathaniel Smith to 156 months of imprisonment for enticing a minor to engage in sexual activity. *See United States v. Smith*, Case No. 3:15-cr-48 (MPS).  In that case, Smith, who lived in Illinois, used his cell phone and internet-based messaging and video chatting services, including Kik and Skype, to entice a 13-year-old female in Connecticut to engage in sexual activity. Not only did he entice her to send him sexually explicit pictures of herself, he also travelled to Connecticut to engage in physical contact with the victim.  It should also be noted that Smith had no criminal history and had mitigating medical issues.

At the upper end of the spectrum, in June 2016, Judge Bolden sentenced defendant Keith Haessly to 240 months of imprisonment, followed by a lifetime term of supervised release, for enticing minors via video chat programs such as Skype.  *See United States v. Haessly*, Case No: 3:16-cr-00032 (VAB), ECF No. 33 at 11 (plea agreement). Between August 2013 and June 2015, Haessly posed as a young female and used previously-recorded videos of females to entice hundreds of boys to engage in sexual activity over Skype and other video chat programs.  *See id.* He then made recordings of the boys engaged in sexual activity, and distributed some of the images he recorded to an individual in Virginia.  *See id.*  While Haessly was in Criminal History Category I (*see id.* at 6), he had images and videos that depicted more than 950 child victims.

Mr. Eastman's conduct is in the middle of the spectrum of conduct in these other cases. Mr. Eastman's conduct is more egregious than defendants Castro and Torres, who enticed just one

victim each and did not take steps to deceive their victims by disguising their true identities,  They were also both in Criminal History Category I, whereas Mr. Eastman has a prior offense involving a minor and is in Criminal History Category VI.  Mr. Eastman's conduct is also more egregious that defendant Simpson.  Although Mr. Simpson and Mr. Eastman both tricked their victims by impersonating other people, Mr. Simpson also was only in Criminal History Category I.  Each of those defendants received a sentence of 120 months, and Mr. Eastman should therefore receive a higher sentence than those defendants. However, Mr. Eastman's conduct appears to be less severe than that of Mr. Haessly.  Although any sexual enticement of a minor is serious and harmful, Mr. Haessly had 950 victims and distributed the videos to others, unlike Mr. Eastman, who only appears to have five victims and did not send the images and videos to others.

In short, based on the various 3553(a) factors discussed above, the Government respectfully requests that the Court impose a non-Guidelines term of imprisonment in the middle of the range of 120 and 240 months, followed by a lengthy period of supervised release.

## V.     Restitution and Fine

The Government is not seeking restitution at this time.  Although MV#4, through her Norwegian attorney, has submitted a compensation claim of up to 75,000 Norwegian Kroner (which, based on the current exchange rate, is approximately $9,000), she has not submitted any medical or mental health documentation to substantiate her claims.  *See* Ex. 2.  Rather, the compensation she seeks appears to be based solely on claims paid to other victims in other cases decided in Norway under Norwegian law.  *See id.*  Her claims do not appear to be based on actual or expected losses.

Moreover, unlike other child exploitation offenses under Chapter 110 of Title 18, which has its own restitution provision at 18 U.S.C. § 2259, the enticement statute is in Chapter 117,

which does not have its own restitution provision.  Accordingly, as set forth in the plea agreement, restitution for enticement is governed by 18 U.S.C. § 3663A.  Restitution under 18 U.S.C. § 3663A can be awarded for medical and mental health costs and lost income, but only if the offense results in "bodily injury" 18 U.S.C. § 3663A(b)(2).  Bodily injury is not a prerequisite for restitution under 18 U.S.C. § 2259, which is not applicable in this case. Here, there is no evidence of bodily injury to MV#4.  Accordingly, the Government is not seeking restitution on behalf of MV#4.

Finally, it does not appear that Mr. Eastman can afford to pay a fine.

## VI.   Conclusion

For the reasons stated above, the Government respectfully asks the Court to impose a non-Guidelines sentence of imprisonment in the middle of the range of 120 to 240 months, followed by a lengthy period of supervised release that includes the additional special conditions of supervised release recommended in the PSR, which largely mirror the conditions Mr. Eastman agreed to in the plea agreement, and forfeiture of his computer.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*/s/ Neeraj N. Patel*
_____
NEERAJ N. PATEL
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. phv04499
157 Church Street, 25th Floor
New Haven, CT  06510
Tel.:    (203) 821-3700
Email: neeraj.patel@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 22, 2017, a copy of the foregoing Sentencing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Neeraj N. Patel*
Neeraj N. Patel
Assistant United States Attorney